# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* EDWARD E. RUETER.

*Replevin—Right of Possession—Bill of Lading Issued by Carrier for Goods Subsequently Received—Issue of New Bill of Lading by Connecting Carrier upon Surrender of First Bill Without Receipt of Goods—What is a Delivery to a Consignee—Rights of Endorsee of Bill of Lading—Bills of Exception— Remanding Cause.*

To maintain an action of replevin, the plaintiff must show that he was entitled to possession of the property at the time of the issuing of the writ.

The fact that the plaintiff may have obtained naked possession of the goods prior to the issuing of the writ, of which he was afterwards deprived, does not show that he was entitled to possession at the time the writ was issued.

When the defendant in an action of replevin had first agreed to surrender the goods to the plaintiff and afterwards changed his mind, alleging a mistake as to plaintiff's right, that agreement does not show that the plaintiff was entitled to possession when the writ was issued.

When a bill of lading is issued by one carrier for goods before they were actually received, upon the faith of another bill of lading for the goods issued by a connecting carrier, the first-mentioned bill of lading operates on the goods when received, by way of relation and estoppel, and that bill is evidence of ownership.

The provisions of Code, Art. 14, which prohibit the issue of a bill of lading by a carrier until the goods have been actually received, is not to be construed as making void the subsequent delivery of goods by a shipper to comply with the bill of lading so issued before actual receipt.

When a carrier in possession of goods accepts from the consignee a surrender of the original bill of lading and issues another bill of lading for the goods to another destination, that transaction is equivalent to the delivery of the goods to the consignee.

On December 5th, the plaintiff in Virginia sold a carload of lumber to the S. Company in Baltimore, and delivered the same to the C. & O. R. Co., receiving therefor a bill of lading to Baltimore *via* that road and the B. & O. R. Co. He sent the bill to the S. Co. and placed in a bank a three days' draft for the price on the S. Co. On December 6th the S. Co. surrendered the bill of lading to the B. & O. R. Co. and received therefor an export bill of lading for the goods to a consignee in Liverpool, and on the same day endorsed that bill of lading to a bank, which paid the S. Co. therefor by discount of the draft attached to the bill. The B. & O. R. Co. received the lumber on December 8th. The S. Co. became insolvent on December 12th, and on that day plaintiff's draft on them for the lumber was protested for non-payment. December 14th, plaintiff notified the B. & O. R. Co. not to deliver the lumber to the S. Co. Subsequently the B. & O. R. Co. refused to deliver the lumber to the plaintiff, and he took the same from it under a writ of replevin. *Held,* that the plaintiff had parted with title to the lumber by delivery of the same to the C. & O. R. Co. and by sending the bill of lading to the S. Co., whose right to receive the goods was not affected by the fact that the bill of lading was marked "non-negotiable."

*Held,* further, that the S. Company's surrender of this bill of lading to the B. & O. R. Co. and that company's issue therefor of another bill of lading operated as a delivery of the lumber, and the title of the *bona fide* endorsee of the latter bill of lading to the property became effective at that time.

*Held,* further, that consequently the plaintiff is not entitled to maintain replevin for the goods.

The rulings of the trial Court on the several prayers for instructions presented to it is to be regarded as a single act, and may all be properly embraced in one exception. But

that same bill of exception should not also contain the rulings of the trial Court on motions to strike out evidence.

In this case, there was a judgment in the Court below for the plaintiff in an action of replevin which is reversed on appeal; but although it clearly appears that the plaintiff was not entitled to possession of the goods, judgment cannot be entered in this Court for the defendant, since the jury failed to ascertain by their verdict the value of the goods replevied, as is required by Code, Art. 75, sec. 117, and consequently the case must be remanded for that purpose.

*Decided February 2nd, 1911.*

Appeal from the Superior Court of Baltimore City (SHARP, J.).

*Plaintiff's First Prayer.*—If the jury find from the evidence that the plaintiff shipped the carload of lumber mentioned in the evidence in this case from Mechum's River, Virginia, to the Stirling-West Company at Locust Point, and that he sent a three-day sight draft for the purchase price to a national bank in Baltimore, if they so find, and if they shall further find that the Stirling-West Company accepted said draft and failed to pay the same, and became insolvent, and that thereupon the plaintiff came to Baltimore and demanded from the defendant the return of this carload of lumber, if the jury so find; and if they shall further find that at that time the goods were still in the possession of the B. & O. R. R., and had not been delivered to the Stirling-West Company, the plaintiff, or the witness McLean, secured to the satisfaction of the defendant, the B. & O. R. R. Company, the payment of the freight charges on said car of lumber, and that the agents and servants of the defendant gave the plaintiff possession of said car of lumber, then the verdict of the jury must be for the plaintiff, notwithstanding the fact that the jury may further find that the defendant

thereafter undertook to retake possession of said lumber. (*Granted.*)

*Plaintiff's Second Prayer.*—If the jury shall find from the evidence that the plaintiff delivered to the Chesapeake & Ohio Railway Company at Mechum's River in the State of Virginia, the carload of lumber referred to in the evidence in this case, for transportation to Locust Point, Baltimore, Maryland, and received from said Railway Company a bill of lading issued at Mechum's River drawn to the order of the Stirling-West Company, marked not negotiable, and sent said bill of lading to said Sterling-West Co.

And if they shall further find that the plaintiff made a three-day sight draft on Stirling-West Company and sent it to said Stirling-West Company through his bank, and that said Stirling-West Company accepted said draft, but failed to pay the same.

And if they shall further find that before delivery of said carload of lumber to said Stirling-West Company said company became insolvent, and before it had received said carload of lumber the said plaintiff notified the defendant, the Baltimore & Ohio Railroad Company, of his desire to exercise, and did exercise, his right of stoppage in transitu, then the verdict of the jury must be for the plaintiff, notwithstanding the fact that the jury may further find that the Baltimore & Ohio Railroad Company had issued a foreign bill of lading for said lumber, upon which it had incurred liability; provided, the jury shall further find that the said Baltimore & Ohio Railroad Company issued said foreign bill of lading before the carload of lumber had actually been received by the said B. & O. R. Co. for transportation. (*Granted.*)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*Duncan K. Brent* and *Allen S. Bowie,* for the appellant.

*Charles A. Marshall* (with whom was *Redmond C. Stewart*
on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appeal in this case is from a judgment in favor of the
plaintiff, the appellee, in an action of replevin against the
Baltimore and Ohio Railroad Company, the appellant, and
the receiver of Stirling-West Company to recover "a car of
lumber." The receiver of Stirling-West Company did not
defend the suit, and judgment by default was rendered
against him, but the appellant filed four pleas in which it
alleged: 1, that it did not take the property of the plaintiff;
2, that at the time of the issuing of the writ the property in
the goods and chattels mentioned in the declaration was in
the defendant; 3, that at the time of the issuing of the writ
the property in said goods and chattels was "in Churchill
and Sim, England;" and, 4, that at the time of the issuing
of the writ the plaintiff had no property in said goods and
chattels. Issues were joined on the first and fourth pleas,
and replications were filed to the second and third pleas as-
serting property in the plaintiff.

The undisputed facts of the case are as follows: The appel-
lee, Edward E. Rueter, trading as Diamond Lumber Co.,
who was engaged in the wholesale Lumber business in Basic
City, Virginia, on the fifth of December, 1905, sold to Stir-
ling-West Company, of Baltimore, a lot of lumber, and on
the same day delivered the lumber to the Chesapeake and
Ohio Railway Company at "Mechum's River," Virginia, and
received from said railway company a bill of lading for the
transportation, over its own line and via the Baltimore and
Ohio Railroad, and delivery of the lumber to the order of
Stirling-West Company, at Locust Point, Baltimore, Mary-
land. The appellee sent the bill of lading which was marked
"not negotiable," to Stirling-West Company, and deposited
in the Basic City Bank a three-days' draft on said consignee
for the price of the lumber. Stirling-West Company re-

ceived the bill of lading, and on the 6th of December surrendered it, properly endorsed, to the freight agent of the Baltimore and Ohio Railroad Company in Baltimore, and requested and received from the appellant a "through export" negotiable bill of lading to the order of Stirling-West Company, Liverpool, England, for the lumber described in the bill of lading issued by the Chesapeake and Ohio Railway Co. On the same day Stirling-West Company presented the bill of lading issued by the appellant, properly endorsed, to the First National Bank of Baltimore, and procured through said bank, from the Fourth Street National Bank of Philadelphia, a draft on Churchill and Sim, London, for sixty pounds, which amount was credited by the First National Bank of Baltimore to the account of Stirling-West Company. This draft, with the bill of lading attached, was received and purchased by the Fourth National Bank of Philadelphia on the 8th of December, and was transmitted by said bank to Churchill and Sim, who paid the draft and received the bill of lading. The car containing the lumber was delivered by the Chesapeake and Ohio Railway Co. to the Baltimore and Ohio Railroad Company at Staunton, Virginia, on the eighth of December. Stirling-West Company became insolvent on the 12th December, and on the 14th of December the appellee received notice that Stirling-West Company had accepted his draft, and that the draft had been protested on the 12th of December. The appellee thereupon requested the Chesapeake and Ohio Railway Company to stop delivery of the lumber, and that company immediately notified the appellant not to deliver it to Stirling-West Company. On the 16th of December the appellee went to Baltimore for the purpose of securing the lumber, and upon his arrival in Baltimore met Mr. McLean who agreed to purchase the lumber for the price at which it was sold to Stirling-West Company, if the appellee could give him good title to it. They learned that the car containing the lumber was at Locust Point, and then went to see Mr. Lewis, freight claim agent of the appel-

lant. Mr. Lewis was not at his office, but his clerk told him that the appellant had received a communication from the Chesapeake and Ohio Railway Company in regard to the lumber, and that he would let him know about it the next morning. The next day they went to Mr. Lewis' office again and met the same clerk who told the appellee that he could have the lumber. They then went to Locust Point, where they met one of the clerks connected with the freight office of the appellant at that point, and Mr. McLean asked him to charge the freight to him and said that he would pay it when he got the lumber. The clerk agreed to charge the freight to Mr. McLean, and the appellee and Mr. McLean then got into the car and were engaged in taking marks off and putting Mr. McLean's brand on the lumber when the agents of the appellant notified them that they, said agents, had made a mistake, that a through bill of lading had been issued for the lumber, and that the appellee could not have it. The appellant refused to deliver the lumber to the appellee, and it was subsequently taken under the writ of replevin in this case and delivered to the appellee, who immediately sold it to Mr. McLean for $292.00 which was paid at the request of the appellee to the American Bonding Company, surety on the replevin bond. As Churchill and Sim did not receive the property described by the bill of lading issued by the appellant and delivered to them, the appellant was required to reimburse them to the extent of $299.74.

Issues having been joined on the replication alleging property in the plaintiff, in order to recover it was incumbent upon him to show that at the time of the issuing of the writ he was entitled to the possession of the property. 1 *Poe's P. & P.* (3rd ed.), secs. 251 and 253; *Cullum v. Bevans,* 6 H. & J. 469; *Warfield et al. v. Walter et al.,* 11 G. & J. 80; *Benesch v. Weil,* 69 Md. 276.

The appellee contends that the appellant delivered the lumber to him on the 17th of December, and that he was therefore entitled to the possession of the property at the

time the suit was brought. But even assuming that what was said and done on that day amounted to a delivery of the property to the appellee, if the appellee was not entitled to the possession of the lumber at that time, and the appellant, after discovering its mistake, ·refused to surrender it, the fact that there had been such a delivery could not affect the question of the appellee's right to the possession at the time the writ was issued. When the suit was brought the lumber was in the possession of the appellant, and was taken from the appellant under the writ. In order to justify that taking the burden was on the appellee to show that he was then entitled to possession, and he can not establish his title by showing that at some time previous to the issuing of the writ he obtained the naked possession of the property without any right thereto.

As the bill of lading delivered by the appellant to Stirling-West Company was issued on the 6th of December, before the appellant received the lumber which was delivered to it by the Chesapeake and Ohio Railway Company on the 8th of December, the appellee further contends that under the provisions of Article 14 of the Code, which prohibit the issue of bills of lading by carriers until the goods and chattels described therein have been received by them, the bill of lading issued by the appellant was void, and that the appellee's right to the possession of the lumber was not affected by the issuing of said bill of lading or by its subsequent endorsement and delivery by Stirling-West Company to said Banks and to Churchill and Sim. The appellee relies on the case of *Aetna Nat. Bank* v. *Water Power Co.,* 58 Mo. App. 523. In that case the bill of lading was issued by the Kansas City, Ft. Scott & Memphis Railway Co. for property that was not in its possession at the time and that was never received by it, and in a suit by the holder of the bill of lading against the original vendor, who had recovered possession of the property at its destination from the Atchison, Topeka & Santa Fe Railway Co., the Court said: "Plain-

tiff's title is founded upon a fraudulent, void and unlawful
bill of lading issued in the face of the prohibition of the
statute and it in consequence has no title or right to the pos-
session which could support a judgment in its favor."

In the case at bar, while the lumber was not in the posses-
sion of the appellant at the time its bill of lading was issued
to Stirling-West Company, it was received by the appellant
on the 8th of December, and from that time it became the
property of the endorsee of said bill of lading.  CHIEF JUS-
TICE SHAW said in *Rowley et al.* v. *Bigelow et al.,* 12 Pick.
306: "The bill of lading acknowledges the goods to be on
board, and regularly the goods ought to be on board before
the bill of lading is signed.  But if, through inadvertance or
otherwise, the bill of lading is signed before the goods are
on board, upon the faith and assurance that they are at hand,
as if they are received on the wharf ready to be shipped, or
in the shipowner's warehouse, or in the shipper's own ware-
house, at hand and ready, and afterwards they are placed on
board, as and for the goods embraced in the bill of lading,
we think, as against the shipper and master, the bill of lad-
ing will operate on these goods by way of relation and by
estoppel."

In the case of the *"Idaho,"* 93 U. S. 575, the bill of lad-
ing was issued by the master of the brig "Colson" to Forbes,
the shipper, for one hundred and forty bales of cotton be-
fore the cotton had been delivered to the "Colson."  Several
days after the date of the bill of lading, and after Forbes had
secured from Porter & Co. a large sum of money on the bill
of lading, Forbes delivered the cotton to the "Colson" and
it was receipted for by the officers of the brig.  The cotton
was placed on the wharf, and before it was taken on board
the brig, Forbes removed it from the wharf and shipped it
by steamship to New York.  In reference to Porter & Co.'s
title to the cotton, the Court said: "It is not only the utter-
ance of common honesty, but the declaration of judicial trib-
unals, that a delivery of goods to a ship corresponding in sub-

stance with a bill of lading given previously, if intended and received to meet the bill of lading, makes the bill operative from the time of such delivery. At that instant it becomes evidence of the ownership of the goods. * * * We do not say that a title to personal property may not be created between the issue of a bill of lading therefor and its delivery to the ship which will prevail over the master's bill, but, in the absence of. any such intervening right, a bill of lading does cover goods subsequently delivered and received to fill it, and will represent the ownership of the goods. The cotton delivered on the 8th of April on the pier for the "Colson," and received by the mates of the brig became, therefore, at the instant of its delivery, the property of Porter & Co., who were then the indorsees of the bills of lading. Its subsequent removal by Forbes to the "Ladona," either with or without the consent of the brig's officers, could not divert that ownership.

"There is nothing in the Statutes of Louisiana which requires a different conclusion. Those statutes prohibit the issue of bills of lading before the receipt of the goods, but they do not forbid curing an illegal bill by supplying goods, the receipt of which have been previously acknowledged. The statutes are designed to prevent fraud. They are not to be construed in aid of fraud, as they would be if held to make a delivery of goods to fill a fraudulent bill of lading inoperative for the purpose. The title of Porter & Co. to the one hundred and forty bales must, therefore, as we have said, been held to have been perfected when they were delivered to the "colson" on the 8th of April."

Apart from the authorities cited as to the effect of the receipt of the lumber by the appellant on the 8th of December, section 6 of Article 14 of the Code declares that such a bill of lading shall "be conclusive evidence in the hands of any *bona fide* holder for value, who became such without actual notice to the contrary," etc., that the goods described therein were "actually received and actually in possession" of the

carrier, and section 9 of said Article provides that "No person having any claim, right or action whatever under this article or otherwise upon or under any instrument declared negotiable thereby, or by reason of the issuing, negotiation or holding of said instrument, or the doing of any matter or thing by this Article forbidden or made punishable, shall be in any way hindered or precluded from asserting or maintaining the same by or because of any prohibitory or punitive provision in this article contained." It follows from what we have said that the learned Court below erred in granting the plaintiff's first and second prayers, which present the contentions of the appellee to which we have referred.

In the case of *Bank of Bristol* v. *B. ʀ O. R. R. Co.,* 99 Md. 661, this Court said: "A bill of lading represents the goods described in it. 6 *Cyc.* 426. Bills of lading by the law merchant are representatives of the property for which they have been given, and the endorsement and delivery of a bill of lading transfers the property from the vendor to the vendee; is a complete legal delivery of the goods, *divests the vendor's lien.* * * * But though the vendor's lien is thus divested by reason of the complete delivery of the *indicia* of property, he may, if the goods have not yet reached the actual possession of the buyer, *and if no third person has acquired rights by obtaining a transfer of the bill of lading from the buyer,* intercept the goods in the event of the buyer's insolvency before payment, by the exercise of the right of stoppage *in transitu."*

These principles have been so long established and have been so generally recognized that it is not necessary to cite other authorities. When the appellee sold the lumber and delivered it to the Chesapeake and Ohio Railway Company for transportation and delivery to the order of Stirling-West Company at Baltimore under the circumstances disclosed by the undisputed evidence, he parted with his title to the property. The bill of lading issued by said railroad com-

pany in the possession of Stirling-West Company as con-
signee, was evidence of Stirling-West Company's title to the
lumber and of its right to receive the property from the ap-
pellant when it came into the possession of the appellant.
This right of Stirling-West Company to receive the lumber
from the appellant was not affected by the fact that the bill
of lading was marked "not negotiable." Stirling-West Com-
pany did not attempt to transfer its title to the lumber by
an assignment of the bill of lading to a third party, but sur-
rendered it, properly endorsed to the appellant. If, at that
time, the property had been in the possession of the appel-
lant, Stirling-West Company could, subject to the payment
of any proper charges for carriage, etc., have exacted delivery
of the lumber, but instead of waiting until the lumber had
been received by the appellant, and then demanding deliv-
ery, Stirling-West Company requested the appellant to re-bill
the lumber to another point, and the appellant issued and
delivered to Stirling-West Company a negotiable bill of lad-
ing therefor to "Shipper's order, Liverpool, England," which
bill of lading, we have said, became effective on the 8th of
December, and was evidence of the endorse's title to the
lumber. In the *Bank of Bristol case, supra,* CHIEF JUDGE
MCSHERRY says that where a carrier in possession of the
property, at the request of the consignee and upon surrender
of the original bill of lading, re-bills the property to an-
other point, it amounts to a delivery of the property to the
consignee, and the same statement is made in the case of
*Midland National Bank* v. *Mo., Kan. & Texas R. R. Co.,*
62 Mo. App. 531.

But we are not required in this case to determine what
would have been the right of the appellee if the appellant
had received notice not to deliver the lumber to Stirling-
West Company before the property came into its possession
or before Stirling-West Company had endorsed and deliv-
ered the bill of lading issued by the appellant to the banks

or to Churchill and Sim for value, for here the appellee did not attempt to stop the delivery of the property until after the 14th of December, and after the title to the property had become vested in the endorsee of the bill of lading issued by the appellant. It is therefore clear on the admitted facts of the case that the appellee was not entitled to the possession of the lumber, and that as the burden was on him to establish his right to the possession, the defendant was entitled to an instruction directing a verdict in its favor.

The appellee filed a motion to dismiss the appeal on the ground that there is but one bill of exceptions embracing exceptions to the rulings of the Court below on seven motions to strike out evidence admitted subject to exceptions and on the prayers. In the case of *Ellicott* v. *Martin*, 6 Md. 509, the Court said: "We * * * are of opinion that each distinct exception, which embraces an independent proposition of law, should be signed and sealed by the Court below, before it can be regarded as a valid exception. This remark does not apply to a series of consecutive prayers offered by the counsel. In such a case the ruling of the Court, in either granting, rejecting or modifying the prayers, may be regarded as a single act, and one exception, if properly taken and executed, may embrace the whole." In the case of *Tall* v. *Steam Packet Co.*, 90 Md. 248, there were several exceptions to rulings of the Court below on the evidence and one to its rulings on the prayers included in one bill of exception, and CHIEF JUDGE McSHERRY said: "This is an unusual and erroneous way to present such essentially distinct propositions. The ruling on each question should form the subject of a separate exception." In the case of *Acker, Merrill & C. Co.* v. *McGaw*, 106 Md. 536, four exceptions were embraced in one bill of exceptions, and the Court, while expressing its disapproval of that mode of presenting questions reserved for review, refused to dismiss the appeal on that ground. In the still later case of *Junkins* v. *Sullivan*, 110 Md. 539, where several exceptions to rulings on the evidence

were included in one bill of exceptions, this Court refused to consider the exceptions, and CHIEF JUDGE BOYD said: "After that recent warning and statement of the law on a subject, we do not feel called upon to review the rulings thus improperly presented to us by those exceptions." In neither of these cases were the irregularities referred to regarded as sufficient ground for a dismissal of the appeal, and the motion in this case must be overruled. But as the ruling on the prayers may be regarded as a single act, and may be embraced in one exception, where exceptions to other rulings are included in the same bill of exceptions they cannot be treated as valid exceptions, and only the exception to the ruling on the prayers will be considered.

In the view we have taken of the case it would not be necessary, however, to consider the questions raised by these exceptions even if they had been properly presented, nor is it necessary to review the ruling of the Court below on the defendant's prayers.

For the error in granting plaintiff's prayers, the judgment of the Court below must be reversed, and as the material facts of the case are not disputed and clearly show that the appellee was not entitled to the possession of the property replevied, judgment would be entered for the appellant but for the fact that the value of the property replevied was not ascertained by the jury as required by section 117 of Article 75 of the Code, and the further fact that there is no sufficient evidence in the record from which this Court can determine its value. The case will, therefore, have to be remanded in order that the value of the property replevied may be ascertained by a jury, unless the parties can agree to such value, and a judgment may be entered for appellant in accordance with the provisions of said section of the Code.

> *Judgment reversed with costs, and case remanded for the purposes stated in this opinion.*