WILLIAM J. HARRIS, Executor,.

*vs.*

LUCRETIA HIPSLEY.

*Verdicts*: *correction by jury; direction of verdict by Court;
issues from Orphans' Court. Wills*: *caveat; capacity; de-
lusions; evidence; relating to time of executing will;
opinions of witnesses. Rebuttal*: *discretion
of Court. Exceptions*: *including sepa-
rate and distinct rulings.*

Ordinarily, a jury should not be permitted to amend its
verdict after it has been recorded and the jury has been dis-
missed.                                        p. 425

In the trial of issues sent from an Orphans' Court for trial
before a jury, the jury rendered their verdict upon certain of
the issues and dispersed without having passed upon a certain
issue as to which, because of want of evidence, the Court had
directed what verdict they should render; the jury was recon-
vened, only a Saturday and a Sunday intervening, and they
not having been sworn in any other cause, and the verdict was
taken upon that issue, as they had been directed to render it:
*Held,* that the action of the Court in recalling the jury and
in so taking their verdict on such issue was proper.     p. 426

A Court passes on the sufficiency of evidence, and where it directs a verdict based upon the want of legally sufficient evidence, the jury has no duty but to obey. p. 427

It is not the practice to enter judgment in the case of the trial of issues sent from an Orphans'' Court. p. 427

The action of a trial Court in ruling upon objections to questions proposed to be asked, will not be reviewed on appeal, where the answers to the questions do not appear in the record.
p. 423

In the trial of issues as to the testamentary capacity of a testator, and a knowledge of the contents of the will, etc., evidence of what had been the situation of the children, etc., offered for the purpose of showing that they were entitled to compensation from the testator, is not admissible. p. 429

Evidence that a testator was subject to delusions is not sufficient to affect his capacity, unless there be offered evidence tending to show that the will was the product of the delusions. p. 431

The opinion of a witness is not admissible in evidence as that of an expert, where it is based in part upon the testimony that he heard, and partly upon evidence that he read, including the opinions and conclusions of other witnesses. p. 433

Whether evidence shall be admitted in rebuttal is a question to be left to a large extent to the discretion of the trial court.
p. 435

Evidence tending to show the capacity of a testator may be shown by a competent witness, although the time of which such witness speaks does not include the actual time of the making of the will. pp. 434-435

Evidence tending to show the incapacity of a testator must relate to the date of the making of the will. p. 435

The practice of including in one exception several rulings on essentially distinct propositions of law is not one to be recommended. p. 435

For counsel to make statements, in their argument before the jury, applicable to issues which are not before them, is confusing and improper. p. 437

*Decided January 15th, 1914.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The following are the prayers in the case, that were offered by the plaintiffs, and by the defendant, and the action of the trial Court thereon:

*Plaintiffs' First Prayer.*—The plaintiffs pray the Court to instruct the jury that if they find from the evidence in this case that at the time of executing the paper writing offered in evidence in this cause, and purporting to be her last will and testament, dated January 24, 1905, Mary A. Harris was not of sound and disposing mind and capable of making a valid deed or contract. then their verdict should be in favor of the caveators, the plaintiffs, on the 2d issue and their answer thereto No, and the jury are instructed that the meaning of the words "sound and disposing mind and capable of making a valid deed or contract," in respect to the disposition of property by last will and testament is that the party making such will must have understood the nature of the business in which she was engaged and must have had a sufficient capacity at the time of making the said will to know and recollect her property, and to make a disposition thereof with judgment and understanding with reference to the amount and situation of her property, and to recollect the relative claims of the different persons who were or should have been the objects of her bounty, and that the meaning of the words "judgment and understanding" as used in this prayer, is not that the jury should reject the will because they believe it is in its provisions unjust and injudicious, yet the provisions of the will may be considered by them in determining the capacity or incapacity of the testator. And the jury are further instructed that it is not necessary for them to find that Mary A. Harris was insane in the popular sense

of the word, before they can adjudge her incapable of execut-
ing a valid deed or contract. (*Granted.*)

*Plaintiffs' Second Prayer.*—The plaintiffs pray the Court
to instruct the jury that if they find from the evidence in
this case that at the time of the execution of the paper writ-
ing offered in evidence and purporting to be the last will and
testament of Mary A. Harris, dated January 24, 1905, the
contents were unknown to her, then their verdict on the 3rd
issue must be for the caveators, the plaintiffs, and their
answer thereto No. (*Granted.*)

*Defendant's First Prayer.*—The defendant prays the Court
to instruct the jury, that no evidence legally sufficient has
been offered to show that the will dated January 24, 1905,
and offered in evidence was not signed by Mary A. Harris
and attested and subscribed by her in the presence of two
or more credible witnesses; and therefore the verdict of the
jury must be for the defendant on the first issue, and their
answer thereto Yes. (*Granted.*)

*Defendant's Second Prayer.*—The defendant prays the
Court to instruct the jury, that no evidence legally sufficient
has been offered to show that the contents of the will dated
January 24, 1905, and offered in evidence was not read to
or by the testatrix, Mary A. Harris, or known to her at or
before the time of the alleged execution thereof, and there-
fore the verdict of the jury must be for the defendant on the
3rd issue, and their answer thereto Yes. (*Refused.*)

*Defendant's Third Prayer.*—The defendant prays the
Court to instruct the jury, that the presumption of law is
that the testatrix Mary A. Harris was of sound mind at the
time she executed the will offered in evidence, and that the
plaintiff is bound to satisfy the jury that said Mary A. Har-
ris was not of sound mind at the time she executed said will,
otherwise their verdict must be for the defendant on the
second issue. (*Granted.*)

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury that no evidence legally sufficient has been offered to show that Mary A. Harris at the time she executed the will dated January 24, 1905, offered in evidence, was not of sound and disposing mind and capable of making a valid deed or contract and therefore the verdict of the jury must be for the defendant on the 2d issue, and their answer thereto Yes. (*Refused.*)

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury that every person of twenty-one years of age, is presumed to be of sound mind and competent to make a will, and this presumption extends throughout his life, no matter to what age he may live; the onus of establishing incapacity is on the parties who assail the will; extreme old age does not of itself disqualify a person for making a will; the law looks only to the competency of the understanding, and neither age nor sickness, nor extreme distress, nor debility of body, will affect the capacity to make a will if sufficient intelligence remain. (*Granted.*)

*Defendant's Sixth Prayer.*—The defendant prays the Court to instruct the jury that the law concedes to a person of sound mind the right to dispose of his or her property by will in any manner he or she may deem proper consistent with its policy, and it is no valid objection to a will that it prefers one child over another, or over the children of a deceased child, provided the testator was mentally competent and at the time free from the operation of undue influence. (*Conceded by Plff.*) (*Granted.*)

*Defendant's Seventh Prayer.*—That if the jury find from the evidence that Mary A. Harris was at the time of executing the will offered in evidence, of sound and disposing mind, and capable of making a valid deed or contract, then she had sufficient mental capacity under the law of Maryland to enable her to make a valid will, and what is meant by the words "sound and disposing mind, and capable of making a valid deed or contract" in respect to making a will, is that she understood the nature of the business she was engaged in,

recollected the property she meant to dispose of and the persons to whom she meant to give it, and understood the manner in which she disposed of it, and the relative claims of the different persons who are or may be the objects of her bounty. (*Granted.*)

*Defendant's Eighth Prayer.*—That in passing upon the mental capacity of the testatrix, the jury should bear in mind that the mere opinion of witnesses are entitled to weight only to the extent that they are supported by good reasons founded on facts which warrant, them in the opinion of the jury. If the reasons are frivolous or inconclusive, the opinions of such witnesses are of no value. (*Granted.*)

*Defendant's Ninth Prayer.*—If the jury find that Mary A. Harris executed the paper offered in evidence as her will, in manner testified to by the subscribing witnesses, and also find that at the time of so doing, she was capable of understanding the business in which she was engaged, and of executing a valid deed or contract, then the legal presumption is, that she knew and understood the contents of said paper. (*Conceded.*) (*Granted.*)

*Defendant's Tenth Prayer.*—The jury are instructed that if they find that at the date of the will on the 24th of January, 1905, the testatrix was of sound and disposing mind, and capable of making a valid deed or contract, then they should disregard any evidence of impairment of her mental faculties after that time, if they find such. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*D. G. McIntosh* and *Frank Gosnell,* for the appellant.

*T. Scott Offutt* and *Elmer J. Cook,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from the rulings of the Circuit Court for Baltimore County at the trial of issues sent to that Court by the Orphans' Court of that county. A caveat to the will of Mary A. Harris was filed, and issues were framed as follows: (1) Whether the paper writing, dated the 24th day of January, 1905, purporting to be her last will and testament, was signed by said Mary A. Harris, or by some other person in her presence and by her express direction, and attested and subscribed in her presence by two or more credible witnesses; (2) As to her testamentary capacity; (3) Whether the contents of the paper writing, dated, etc., were read to or by her, or known to her at or before the time of the alleged execution thereof, and, (4) Whether it was procured by undue influence exercised and practiced upon her.

The trial began on May 26th, 1913, and ended on June 6th. At the conclusion of the plaintiffs' testimony (on June 2nd) a verdict was rendered in favor of the caveatee on the 5th issue (undue influence) by direction of the Court. There are twenty bills of exception presenting rulings on the admissibility of evidence. The twenty-first contains rulings on motions to strike out testimony and on the prayers. The plaintiffs (caveators) offered two prayers, both of which were granted, and the defendant (caveatee) offered ten, all of which were granted except the second and fourth. An exception was taken to remarks of counsel for plaintiffs during his argument before the jury. The judge of the trial Court declined to sign a bill of exceptions as presented, but did sign a certificate stating his recollection of what occurred, supplemented by stenographic notes of one of the counsel.

The jury on June 6th rendered a verdict for the plaintiffs on the second and third issues, their answer to each being "No." At the time no verdict was rendered on the first issue —the one on the fourth having already been rendered as stated above. On the 9th of June (only Saturday and Sunday intervening) the jurors who had separated were called

together by the Court, not having been sworn in any case in the interim, and their verdict was taken upon the first issue, which was for the defendant, and their answer thereto was "Yes." That action of the Court is presented by the twenty-second bill of exceptions. There was also a motion filed on August 2nd to strike out the verdict and not certify it, which was overruled, and we understand was based on the ground referred to in the last exception, although we find no reason assigned in the record.

Inasmuch as it involves the validity of the verdict, we will first consider the last (22nd) exception. The bill of exceptions speaks of this issue as the *second,* but inasmuch as the *second* was as to testamentary capacity and the record shows that there was a verdict for the plaintiffs and the answer "No" on that issue, it was clearly a clerical error in the exception. Nearly all of the testimony is in reference to the testamentary capacity of the testatrix, and that was the real controversy at the trial, and, while it is not conceded, we do not understand it to be denied by the attorneys for the appellant that the verdict taken on June 9th was on the *first* issue, as the docket entries show. It is undoubtedly true that the jury should have passed on all the issues not already disposed of, and it must be conceded that ordinarily the jury should not be permitted to amend their verdict after it has been recorded and the jury dismissed. But in this case the jury was instructed on June 5th by the defendant's first prayer, that there was no evidence legally sufficient to show that the will was not signed by Mary A. Harris, and attested and subscribed by her in the presence of two or more credible witnesses, and therefore their verdict must be for the defendant on the first issue, and their answer thereto, "Yes." The verdict was not, however, entered on that issue when the prayer was granted, as there had been on June 2nd on the fourth issue, and that fact was apparently overlooked by the Court, the clerk and the attorneys. It would seem remarkable if the rules of law, at this day when Courts are endeavoring to get out of the meshes of

useless technicalities, which have brought more or less dis-
credit upon the administration of justice in the past, would
require a reversal of a case which had occupied nearly two
weeks in the trial and is presented to us for review by a
record of over five hundred printed pages, for the reason now
under consideration—especially when it is remembered that
the verdict now complained of was in favor of the appellant
and was in accordance with the instruction of the Court
granted at his instance on June 5th. The jury did not amend
their verdict by changing or affecting it as to either of the
issues they actually passed on, but simply rendered a verdict
on another and distinct issue which they could and should
have rendered on June 5th. They could not have rendered
any verdict on that issue other than what they did render
"without violating their duty and acting in contempt of the
Court." *Diamond State Co.* v. *Blake,* 105 Md. 570.

In the case just cited, the Court, at the conclusion of the
plaintiff's testimony had instructed the jury to render a
verdict in favor of the Chestertown Electric Light & Power
Co., one of two defendants who had been sued in that case.
As there said: "The proper practice undoubtedly was to have
taken the verdict when the prayer was granted, but it was
overlooked." The jury rendered a verdict at the conclusion
of the whole case, "for the plaintiff for the sum of $1,950."
The Diamond State Telephone Co. filed a motion in arrest of
judgment, whereupon the Court instructed the clerk as fol-
lows: "You are hereby directed to amend the docket entries
in the above entitled case by inserting after the words 'judg-
ment *nisi* on verdict for plaintiff for $1,950, October 25th,
1906' the words 'as against the defendant The Diamond
State Telephone Company, and judgment for the defendant,
The Chestertown Electric Light and Power Company, for
costs.' " That action of the lower Court was sustained by
us, and we said: "It is undoubtedly the duty of a Court to
sustain a verdict when that can be done from its language
and from the record. While this Court has been cautious

in allowing amendments to verdicts, after they are recorded, it has not hesitated to do so when there was no reasonable doubt about the intention of the jury.". There the Court named the defendant against which the judgment should be treated as rendered, and entered a judgment in favor of the other defendant because the Court had granted a prayer discharging the one defendant, and the jury was presumed to have known that they could not render a verdict against that defendant. We said, "The order of the Court was in the nature of a *nunc pro tunc* order, although not strictly so," and it might be so treated here, for surely if it is permissible in a case like that, where there were two defendants, for the Court to amend the verdict without ever reconvening the jury, by rendering such a judgment as would have been rendered if the verdict of the jury had conformed to the instruction of the Court, it was proper to have the jury in this case render the verdict directed by the Court on the issue which was not previously rendered simply because it was overlooked. There was no possible danger of injury to the parties by reason of the jury having separated, for the clear reason that the Court had already determined for them as a matter of law what their verdict should be, and they could not render any other. If the practice was to enter judgments in such cases, the Court might have done as was done in *Diamond State Co.* v. *Blake,* but as under our practice no judgment is entered on the findings of a jury on issues from the Orphans' Court, the proper practice was to do what was done—to recall the jury and direct them to render the verdict which the defendant's first prayer had instructed them to render. As the Court passes on the legal sufficiency of evidence, when that question is raised, the jury has nothing to do but obey the instructions of the Court if the Court determines, as it did as to this issue, that there was no legally sufficient evidence to be submitted to the jury. Under these circumstances, we can have no doubt that the action of the lower Court was correct, and it becomes unnecessary for us to deter-

mine how far, or when a verdict, can be amended under different conditions. The general subject is considered in *Edelen* v. *Thompson,* 2 H. & G. 31; *Browne* v. *Browne,* 22 Md. 115; *Gaither* v. *Wilmer,* 71 Md. 361; *Farmers' Packing Co.* v. *Brown,* 87 Md. 1; *Hechter* v. *State,* 94 Md. 429; *Bronstein* v. *American Ice Co.,* 119 Md. 132; *Poe's Practice,* sections 192a and 332, but the case of *Diamond State Co.* v. *Blake, supra,* is more analagous to this one, as there as well as here. the action of the Court only carried into effect what it had previously determined. There was then no error in reference to the verdict on the first issue.

Having disposed of that question, we will now consider the exceptions taken during the trial in the order in which they are presented by the record, excepting in so far as they may be grouped. The first and third were in reference to the same subject, but as there is no answer to the question objected to in the third, we can not review it. Indeed the questions which elicited the objectionable answers in that bill of exceptions were not excepted to, although it was probably because the attorneys understood that the Court had already ruled on them, and did not deem it necessary to repeat the objection. The question in the first was, "Up to the time these girls left home, what character of work did they do about the place?" The expression, "these girls," referred to the daughters of Mr. and Mrs. Harris, and we can not understand the relevancy of that testimony—especially as they had married and left home years before the death of Mr. Harris. He died November 18th, 1904, and the will of Mrs. Harris was made January 24th, 1905. The appellees relied on what is said in *Davis* v. *Calvert,* 5 G. & J. 301, that the contents of the will, the manner in which it was written and executed, together with the nature and extent of the estate of the testator, his family and connections, their condition and relative situation to him, and the claims of particular individuals, the condition and relative situation of the legatees or devisees named,

&c., "are all proper to be shown to the jury, and often afford important evidence in the decision of the question of incapacity." But in so far as such matters were relevant at all, they related to Mr. Harris and not to the testatrix. The answer was calculated to arouse the prejudices of the jury in favor of the appellees, and the question ought not to have been allowed. There could be no possible reason for permitting such testimony unless on the theory that inasmuch as the three daughters had done so much work and had suffered such privations, they were entitled to be compensated, at least by the will, but if that be conceded, Mrs. Harris was not shown to have been responsible, and for aught that appears in the record, she may have at that time done as much work and suffered as many privations as either of the daughters. Although that was not excepted to, an answer given to the question asked Mrs. Hipsley, "What did your parents pay you?", shows what such testimony will lead to. Her reply was, "What we had to eat, sometimes we had a few clothes to put on, and sometimes we didn't." There was no suggestion that the mind of either Mr. Harris or Mrs. Harris was affected at the time spoken of, and if it be true that sometimes the daughters "had a few clothes to put on, and sometimes we didn't," as that witness solemnly swore, surely neither parent manifested such interest in the daughters as to cause the provisions of Mrs. Harris' will to reflect in any way upon her testamentary capacity. There was reversible error in the ruling on the first exception.

The second, fourth, fifth, sixth and eighth exceptions were in reference to testimony of the mental condition of the decedent after the making of the will. It is conceded that the old lady's mind became very much impaired the latter part of her life. Her physician, Dr. Benson, testified that on December 13, 1908, she had "a slight stroke of apoplexy, it was not apoplexy either, but an embolic attack," and there was another attack—he thought about a year later. He said there was more or less impairment after that time. The

latter part of her life the old lady was inclined to wander away so much that her son, with whom she was living, erected a wire enclosure in the yard, so as to keep his mother within those bounds when she was out of the house. We understand that to have been in 1910 or 1911.

Under our decisions it is permissible to offer evidence reflecting upon the condition of a testator's mind both after and before the will was made, but only for the purpose of enabling the jury to determine the condition at the time the will was made. *Brashears* v. *Orme,* 93 Md. 442; *Jones* v. *Collins,* 94 Md. 403; *Gesell* v. *Baugher,* 100 Md. 682; *Davis* v. *Calvert,* 5 G. & J. 300. In the case last cited, after stating the standard by which the mental capacity of a testator is to be ascertained—that at the time he was capable of executing a valid deed or contract—CHIEF JUDGE BUCHANAN said: "That state of mental capacity is to be determined by the condition of the testator's mind at the time of his executing or acknowledging the will or testament. For notwithstanding his incapacity at a prior or subsequent time should be proved, it does not necessarily follow that he was incompetent when the will or testament was made, as his incapacity before or after that time might have been the effect of a temporary cause. But for the purpose of shedding light upon the state of his mind, at the time the will or testament was made, evidence of its condition, and of his bodily imbecility, both before and after that period, may be produced."

It can not be doubted that the admission of testimony as to acts and conduct of the testator at times before and after the will was made is often calculated to produce a false impression on the minds of jurors, or at least have undue influence over them, unless very carefully guarded. If such acts and conduct be of a character to convince jurors that there was a lack of testamentary capacity either before or after the will was executed, there is great danger of it having more weight than the law allows in reflecting upon the men-

tal condition at the time the will was made. It is therefore of the utmost importance when such testimony is offered that the time be as clearly shown as is possible. In a protracted trial it is exceedingly difficult for jurors to remember all the dates of occurrences spoken of.

The evidence of George E. Dearholt, a son of one of the caveators, presented by the second bill of exceptions, fixed the dates as well as one of his age could well do. He did not testify to anything which occurred prior to the execution of the will which indicated any impairment of the mind of the testatrix, and while he spoke of his grandmother not recognizing him about a year after his grandfather's death, which of itself, as explained by him, was not of any importance, that was not excepted to. The exception was to what he noticed, if anything, about the actions or speech of the testatrix two or three years after Mr. Harris' death. His answer to that was that on one occasion a storm was approaching and the wind blew some dust along the road, when she said: "Look at those men running to the barn, afraid they will get wet," while, as he said, he only saw the dust. That ought to have been stricken out, as juries should not be permitted to consider such trifles in determining the testamentary capacity of a testatrix. It was a perfectly natural thing to see men running to the barn as a storm approached, and if this old lady, who was then nearly eighty years of age, thought she saw men as she looked through the dust, it would furnish no foundation for a verdict against her testamentary capacity. If it was a delusion, the law is that, "the existence of a delusion in the mind of a testator, even at the time of making his will, as to particular persons or things, will not invalidate the will unless it is the product of the delusion"— *Gesell* v. *Baugher,* 100 Md. 686; and when the alleged incapacity is the result of an insane delusion the burden is on the caveator to show that the will is the direct offspring of such delusion—*Jones* v. *Collins,* 94 Md. 414. All of this character of testimony was admitted subject to exception,

and this ought to have been stricken out as requested in the motion; but, as will be seen in our consideration of the twenty-first exception, that motion is not properly before us.

We find no reversible error in the fourth exception. If there had been, the question was repeated and answered without objection. According to the record, the answer in the fifth exception was stricken out by the Court. Some of the occurrences stated by Edward Crue to show failure of memory were of little or no force—such as the loss of her glasses and forgetting about the water bucket—but we do not find any exception to the occurrences prior to June 1, 1907, and it is therefore unnecessary to discuss them. There was no error in the sixth exception, as those facts were admissible for what they were worth. Nor can we say there was error in the seventh exception, in permitting Edward Crue to testify as to whether the testatrix was capable of executing a valid deed or contract on the 24th of January, 1905, the date of the will. He lived in the same house with her from February 1st, 1899, until the latter part of November, 1904, when she went to live with her son. He said she visited them from that time until he left the house on March 1st, 1905, a half-dozen times. After that he saw her three times, once in 1907 and again in 1908. So we would not be justified in holding that under our decisions he was not qualified to testify as to her testamentary capacity when the will was made.

There was no error in the eighth exception. The reply of the witness was more favorable to the caveatee than to the caveators, but, at any rate, the Court could not anticipate that the question, which was relevant, would not be answered in a way that reflected upon the question at issue. In the ninth exception, Dr. Dunton was asked this question: "Doctor, assuming the testimony which you have read and the testimony you have heard this morning to be true, are you able to form an opinion as to the mental condition of Mrs. Mary A. Harris on January 24, 1905?" He answered: "I believe I can"; and he was then asked to give his opinion

as to the mental condition of Mrs. Harris on that date. To that he gave a long reply, which began, "From the testimony, as read and given here, I believe Mrs. Harris was suffering from senile dementia, which came on her probably when she was about sixty, or probably earlier." We fail to find a particle of evidence in the record to base such a statement on. That was at least eighteen years before her will was made and before her husband died, and there is no testimony suggesting any impairment until two or three years before her husband's death. Other statements in that answer might be referred to, but without prolonging this opinion by discussing them, his admission on cross-examination that he never saw Mrs. Harris, but his opinion was based on the testimony, a part of which he had heard and the rest he had read, "including the testimony of Mr. and Mrs. Crue, and their opinions and conclusions on the subject." shows that his testimony was clearly inadmissible, and regardless of that admission, which was made after the question excepted to was allowed, his answer shows that he based his conclusion on all of the testimony, which included that of Mr. and Mrs. Crue, as well as other witnesses.

In *Kelly* v. *Kelly*, 103 Md. 554, JUDGE BRISCOE, in considering the hypothetical question propounded to a medical expert, said: "The question also contains the conclusions and inferences of witnesses, and not the actual facts as they had been proved in the case. In *Williams* v. *State*, 64 Md. 384, it is said: 'While an expert may give his opinion upon facts assumed to have been established, it would be against every rule and principle of evidence to allow him to state his opinion upon the conclusions and inferences of other witnesses.'" Instead of submitting the hypothetical question to Dr. Dunton, based on certain facts therein stated, the one submitted to him was based on all of the testimony of the plaintiffs—he being the last witness offered by them in chief—and he admittedly included the opinions and conclusions of the witnesses. It seems to us that such testimony of

an expert is too clearly inadmissible to require the citation of authorities on the subject, but if any be desired, what was said in *The Berry Will Case,* 93 Md. 560, and *Berry* v. *Safe Deposit Co.,* 96 Md. 58, is sufficient. The only difficulty we have about this testimony is whether the objection to the question whether Mrs. Harris was on January 24th, 1905, capable of executing a valid deed or contract, is so presented to us that we can review the action of the lower Court. That we will pass on in considering the twenty-first bill of exceptions, but there was error in what is presented by the exception.

The tenth exception was to the refusal of the Court to allow Charles Fromm to answer this question of the caveatee: "Now I want to ask you, during this period that you saw her when you saw her when you were a tenant on the place and your business relations between you, and from your conversations, state whether or not you are able to express an opinion whether she was capable of executing a valid deed or contract?" The witness had testified that he rented the old farm from Mrs. Harris in February, 1905. He went twice with his father-in-law to see her at her son's home about renting the farm, and on the second visit concluded the bargain. He moved on the farm the 1st of March, 1905, and left the latter part of September, 1906. During that time he saw her quite frequently—after he moved there he thought he and his wife went to the appellant's, where she was, about every two weeks. The testatrix was at his house a number of times, and after the appellant moved to what is called the Hoffman house, he was there possibly once a week. He had conversations with Mrs. Harris; he and his wife took tea with her at her son's and talked about farming and other matters. He saw her a few times after his tenancy ended, but not quite so often. His evidence shows that during the eighteen months he was her tenant he had many opportunities to know her business qualifications as well as the character of her mind in other respects, and we think he should

have been permitted to answer the question. He was entirely qualified to speak of her condition during the period referred to, and while that did not include the date of the will, but began a few weeks after it was executed, that is not necessary in proving the competency of the testator, although it is in proof of the incapacity of a testator. *Jones* v. *Collins,* 94 Md. 411; *Gesell* v. *Baugher,* 100 Md. 682; *Grill* v. *O'Dell,* 113 Md. 633.

We do not understand the eleventh exception to be pressed. The twelfth is not very material, but the testimony ought not to have been admitted. It was not only hearsay, but too remote to reflect on the testamentary capacity of the testatrix. We do not perceive the materiality of the thirteenth. As Mr. Aby had not seen Mrs. Harris from 1902 until 1906, he could not have spoken with any reasonable certainty as to her condition in January, 1905, the time he was asked to speak of in the fourteenth exception. We think the letter referred to in the fifteenth exception was admissible, under the principle announced in *Waters* v. *Waters,* 35 Md. 544, in connection with the lease which was in evidence, although it was not very material, and its rejection could scarcely be ground for reversal. There was no reversible error in the sixteenth, seventeenth, eighteenth, nineteenth and twentieth exceptions. Whether evidence shall be admitted in rebuttal must to a great extent be left to the trial Court, but the witnesses for the appellant had testified to statements at the interview spoken of, which those for the appellees had the right to deny, and the twentieth was not material.

This brings us to the twenty-first exception. Objection is made that it embodies the rulings of the Court on three several and distinct matters—the motion to strike out Doctor Dunton's evidence, the motion to strike out the testimony of the witnesses named as to the testamentary capacity of the testatrix subsequent to June 1st, 1907, and the prayers. This Court has a number of times disapproved the practice of including rulings on essentially distinct propositions of law

in one exception. *Ellicott v. Martin,* 6 Md. 517; *Tall* v. *Steam Packet Co.,* 90 Md. 248; *Acker, Merrall & C. Co.* v. *McGaw,* 106 Md. 536; *Junkins* v. *Sullivan,* 110 Md. 539; *B. & O. R. R. Co.* v. *Rueter,* 114 Md. 687; *Cit. Mut. F. I. Co.* v. *Conowingo Bridge Co.,* 116 Md. 439. We have declined to dismiss appeals on that ground, but in *B. & O. R. R. Co.* v. *Rueter,* there was one bill of exceptions embracing exceptions to the rulings of the Court below on seven motions to strike out evidence which had been admitted subject to exception and on the prayers. We overruled the motion to dismiss, but said: "But as the ruling on the prayers may be regarded as a single act, and may be embraced in one exception, where exceptions to other rulings are included in the same bill of exceptions, they can not be treated as valid exceptions, and only the exception to the rulings on the prayers will be considered." With such a recent decision by this Court on the very question which we have before us, we do not feel at liberty to entertain the exceptions to the rulings on the motions to strike out the testimony excepted to. The question asked Dr. Dunton as to whether the testatrix was capable of executing a valid deed or contract on January 24, 1905, was not specially excepted to, and was probably thought by counsel for the appellant to be included in his objection and exception, but the record does not so show. We are of opinion, however, that there was error in allowing the question which was embodied in the ninth exception to be answered inasmuch as it necessarily included the conclusions and opinions of witnesses, as the Doctor in fact admitted he did in answering the question. It is based on the assumption that the testimony which he had read and heard was true and part of that testimony included the opinions, conclusions and inferences of the witnesses as we have shown above. To permit that was practically to allow a medical expert to take the place of the jury.

The only remaining question under this exception is the ruling on the prayers. There was no error in granting the

plaintiffs' first prayer or rejecting the defendant's fourth prayer, under the evidence admitted by the Court. The defendant's second prayer should have been granted. There was no evidence contradicting that of Mr. Linzey, who said that Col. McIntosh handed the will to Mrs. Harris and told her to read it over; that she sat there and read it for sometime, and then handed it back and said it was all right. The third issue was whether the contents of the paper writing, etc., were read to or by her, or known to her at or before the time of the alleged execution thereof. There was not only no evidence to the contrary, but affirmative evidence to show that she did read it herself. There was therefore error in rejecting the defendant's second prayer, and in granting the plaintiffs' second prayer.

The only other question introduced is as to the remarks made by counsel during the argument. That is not very material now, inasmuch as we must reverse the case for other reasons, but we will add that what was said was well calculated to mislead the jury. The statement, if admissible at all, was certainly more applicable to the question of undue influence, which was not before the jury, than to that of testamentary capacity. Although it is to be regretted that a case of this kind which occupied many days, must be retried, our conclusions as to some of the exceptions compel us to award a new trial. While that is in the discretion of the trial Court it is apparent from the record as presented to us that the caveatee labored under great disadvantage by having some of the important evidence admitted subject to exception. He could, however, have made his motion to exclude such of it as he still thought inadmissible at the conclusion of the plaintiffs' testimony, which would have relieved him of some of the embarrassment.

*Rulings reversed, and cause remanded.*