FIRE INSURANCE COMPANIES *v.* THE STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Trusts and combines.* Code 1892, § 4437. *Ib.*, § 1007.

Trusts and combines, as defined by code 1892, § 4437, and the penalty for which is provided by code 1892, § 1007, are not misdemeanors, either at common law or by statute, but are expressly made felonies.

2. SAME. *Conspiracy. Indictment. Injured party. Public.*

If the object of a conspiracy is to injure a particular person specifically, an indictment therefor must name the person to be injured; but where the object is to injure any and all persons who may come within the range of its operations, it is only necessary to charge that its purpose and effect was to injure the public.

3. SAME.   *Venue.   Overt act.*

In an indictment for conspiracy, the venue may be laid either in the county of the original unlawful confederation, or in that wherein any overt act pursuant thereto transpired.

4. SAME.   *Statute of limitations.*

Every overt act in furtherance of a conspiracy is a renewal of the original unlawful agreement, a repeating of the conspiracy as a new offense; and the fact that the original agreement was made more than the statutory period before indictment found, does not bar by limitation a prosecution for overt acts, renewing the conspiracy, committed within said time.

5. SAME.   *Code* 1892, § 1007.   *Indictment.   Argumentativeness.*

An indictment, under code 1892, § 1007, must aver that the effect of the trust was to injure either the public or some named person or corporation in this state.   The words of the statute on the subject, or equivalent terms, are essential to its validity, and they must be distinctly, and not argumentatively, charged.

6. INSURANCE TRUSTS.   *Code* 1892, § 4437; *Laws* 1896, *p.* 68.

The business of fire insurance companies is within the provisions of code 1892, § 4437, and that section was not repealed as to such companies by the act of 1896 (Laws 1896, ch. 56, p. 68).

FROM the circuit court of Lauderdale county.

HON. JOHN W. FEWELL, Judge.

The facts are stated in the opinion of the court.

*Miller, Smith & Hirsh,* for appellants.

The section and clause (4437*g*) of the code, upon which the indictment is founded, must of course be taken in connection with section 1007, which announces the penalty.   And we apprehend that no indictment can be regarded as sufficient, in substance, unless it is so framed that, upon its face, upon a plea of guilty, a legal sentence can be pronounced.   An overt act in this state, in furtherance of the agreement, and itself a crime, must follow to the injury of some person or corporation here, in order to bring this criminal statute into play.   In the absence of an averment and proof of specific injury, the only pos-

sible penalties are civil.   Neither at common law or under the
statute does any penalty attach to combinations or agreements
neither wrong in themselves nor hurtful to third persons.   At
common law there is no support for the indictment, because,
in the first place, it is based upon particular acts with which
the statute deals for the first time, and has relation to a partic-
ular penalty which the statute would prescribe for the complete
offense, and, secondly, it does not aver that the purpose was to
form a conspiracy to extort money from the public or any third
person, known or unknown to the grand jurors.   We think it
patent that we are, so far as the indictment is concerned, deal-
ing with the statutory offense provided for by § 1007 of the
code, or none at all.

To warrant punishment under § 1007, for violating ch. 140,
it is clearly necessary to show on the face of the indictment, not
alone that an agreement was entered into to place the control
of rates to be charged in Lauderdale county under the control
of trustees, with an agreement to abide by the same, but that,
in pursuance to such agreement, this control was vested in and
exercised by the trustees; that the trustees did accordingly fix
uniform rates or rates by which all were bound and were actu-
ally governed; and, lastly, by means thereof the insurances
were raised, or otherwise were unreasonable, to the injury of
some named person or corporation in Lauderdale county, known
or unknown to the grand jurors.   Or, if the court should be
of the opinion that the words, "the public," are so compre-
hensive as to embrace all persons and all corporations, it would
still be necessary to aver, under the statute, some loss or injury
resulting from the application by the trustees, pursuant to the
agreement of uniform rates, shutting off competition and main-
taining or embracing rates of insurance.   It is a mere assump-
tion in the pleading—not a known fact or legal presumption—
that the absence of competition in rates would work an injury.
The contrary might be true.

A consideration of the indictment will show that these essen-

tial averments to constitute the offense of placing the control of insurance business, to the extent of fixing rates, in the hands of trustees are entirely wanting.

No place is even mentioned or hinted at to indicate where this alleged conspiracy was formed. The venue is not laid.

*J. A. P. Campbell,* on same side.

It is evident that the indictment was framed with reference to § 1007 of the code of 1892, and it is equally evident that it is not good under that, if for no other reason than because it fails to aver that the combination had "the effect to injure any person, or corporation, in this state." At common law, it was not unlawful to agree on rates of premiums or to combine for that, or to adopt appropriate means to effect that object. The indictment does not charge an improper purpose in what was done. It does not aver the creation of a monopoly, or an improper schedule of rates. The conspiracy must be charged, and not aided by averment of acts. *United States* v. *Britton,* 108 U. S., 199; *Pettibone* v. *United States,* 148 U. S., 197; *Laura* v. *State,* 26 Miss., 174. As a charge of conspiracy, this indictment is mere sound and fury. Is it not manifest that the indictment must be tried by ch. 140 of the code alone, unaided by anything else, and being bad under that, must fall? The indictment is for a criminal conspiracy, under subsection *g* of § 4437 of the code of 1892, and is bad under that and § 1007 both, because the thing done is not averred to have been "inimical to the public welfare," or to have had "the effect to injure any person in this state."

Insurance companies are not in the purview of ch. 140 of the code. They are not named in the chapter, and the terms it employs do not embrace them; and so many considerations suggest the folly of denying to them the right to make use of a convenient instrumentality for fixing a just basis for insurance, as matter of fairness and justice to both insured and insurers, as to lead to the conclusion that such action by insurance com-

panies was not intended to be prohibited under the severe penalty prescribed. The terms " trade," " commodity," " production," " importation," " manufacture," " transportation," " sale or purchase of a commodity," are not applicable to insurance companies and their business as insurers; and, while carrying on insurance is a business, it is not trade or traffic or commerce, etc., and it does not produce commodities and has no " product; " and, while it has earnings, the use of this term, in conjunction with " products," shows the character of business meant by the law. *Noscitur a sociis;* and the terms of the law show clearly what the lawmaker had in view, and that insurance companies were not thought of. Not being mentioned, they will not be brought within the influence of this highly penal law, unless they are clearly included in its terms; and, so far from that, they are plainly excluded by the language used. The exceptions of certain classes from the operation of the chapter show that the whole chapter relates to those engaged in the production of commodities, transportation, sale, etc.

*Miller & Baskin,* on the same side.

We submit that the indictment charges no offense, because the facts therein alleged do not constitute a conspiracy under code 1892, subsection *g,* § 4437. That subdivision of § 4437 was intended evidently to prohibit any agreement to place under the control of trustees the legal estate or the beneficial interest in property or business. The word " control " used in that subsection clearly means that the trustee to whom the control is surrendered should have the government, the rule, the command, the control, and direction of the matter or estate delegated, to the exclusion of the person delegating such authority; and the word " power," used in said subsection, evidently contemplates that the trustee, by the agreement, should have authority enabling him to dispose of the interest vested in him for himself or for another person.

Again, we submit that the indictment is defective in not

averring any act committed by the alleged trustees or the defendants in furtherance of the conspiracy. It does not appear from the indictment that the trustees exercised any control whatever over the rates prescribed for fire insurance in Lauderdale county. We contend that no indictment would be sufficient unless it appear therefrom that the rates were fixed by the trustees, and that charges were made in pursuance thereof, and that the same were unreasonable and unjust, and thereby injuriously affected the public trade.

As to the contention that the indictment sufficiently charges an offense under the common law, we submit that the acts so prohibted by § 4437, subdivision (*g*), are not indictable at common law.

*Wiley N. Nash*, attorney-general, for the appellee.

A combination is a conspiracy in law whenever the act to be done has a necessary tendency to prejudice the public or oppress individuals by unjustly subjecting them to the power of the confederates, and giving effect to the purposes of the latter, whether of extortion or mischief. 3 Wharton's Crim. Law, sec. 2322, and note *y*.

The offense consists not so much in the accomplishment of any unlawful or injurious purpose, nor in any one act moving towards that purpose, but in the actual concert and agreement of two or more persons to effect some thing, which being so concerted or agreed upon, the law regards as indictable. Wharton's Precedents of Indictment and Pleas, 431, 432, note *a*.

Such a combine as the one charged is unlawful at common law; the combine itself is unlawful and indictable. It is indictable to engross under any one control any business staple so as to force the community to purchase it at an exorbitant price. 2 Wharton's Criminal Law, sec. 2324. A combination between miners in a particular market, controlling the coal in that market, was held, in Pennsylvania in 1871, to be indictable at common law. *Ib.*, citing *Morris Run Coal Co.* v. *Barclay Coal Co.*, 18 Pa. St. (18 P. F. Smith), 173.

---

Argued orally by *C. C. Miller*, *J. A. P. Campbell*, and *T. M. Miller* for appellants, and by Attorney-general *Wiley N. Nash* for appellee.

Whitfield, J., delivered the opinion of the court.

Section 4437 (*g*), of code of 1892, defining certain trusts and combines, is in these words: "A trust and combine is a combination, contract, understanding or agreement, express or implied, between two or more persons, corporations, or firms, or associations of persons, or between one or more of either, with one or more of the others, (*g*) to place the control, to any ex-extent, (1) of business, or (2) of the products, or (3) earnings thereof, in the power of trustees, by whatever name called; and is inimical to the public welfare, unlawful and a criminal conspiracy." And subdivision (*h*) defines a trust to be such an agreement "by which any other person than themselves, their proper officers, agents and employes shall, or shall have the power to, dictate or control the management of business." Section 1007 of said code provides: "Every person or corporation who shall enter into, pursue, be concerned in, or knowingly share the profits or loss of any trust and combine, as defined by the chapter on trusts and combines [said § 4437], whether within or without this state, if it have the effect to injure any person or corporation in this state, shall be guilty of a felony, and, on conviction, shall be punished, . . . if a corporation, by a fine of not less than $1,000." Section 1006 of said code defines and provides for the punishment of conspiracies which are misdemeanors. Section 1454 of said code declares: "Offenses for which a penalty is not provided elsewhere by statute, and offenses indictable at common law, and for which a statutory penalty is not elsewhere prescribed, shall be punished by fine of not more than $500 and imprisonment in the county jail not more than six months, or either." The indictment in this case was found against thirty insurance companies, all but one being foreign companies. A *nolle*

*prosequi* was entered as to one, and twenty-eight were convicted, and fined $500 each.

The indictment charges that these companies were "engaged in the business of issuing policies of insurance against loss by fire, in said county of Lauderdale and State of Mississippi, and, being independent companies, each from all the others, the said defendants, and each of them, did, heretofore, to wit,   .   .   . unlawfully, wickedly, designedly and feloniously enter into an unlawful combination and conspiracy between themselves, respectively and with each other, and each with the other, whereby the said defendants, and each of them, did place the control of their said business of insurance, to the extent of fixing and prescribing the rates of the premiums on fire insurance to be charged the public in said county and state, by defendants and each and all of them, in the power of trustees, to wit: under the control of a certain association formed by or composed of Charles C. Fleming and other persons to the grand jurors unknown, called the Southeastern Tariff Association, and did unlawfully and feloniously agree with each other, and each with the other, to abide by, adhere to and be bound by the rates so to be fixed for such premiums by the said trustee called the Southeastern Tariff Association, and not to vary from such rates in the issuing of policies of insurance in said county and state, thereby unlawfully and feloniously depriving the public of the benefits of competition in the matter of fire insurance rates," etc.    This indictment was demurred to on many grounds, and the demurrer was overruled and the trial proceeded with as for a misdemeanor, the court, in overruling the demurrer, holding that it properly charged a misdemeanor, manifestly not deeming it good as for the felony denounced by §§ 1007, 4437 (*g*).

It will be noted that the indictment nowhere charges, in the language of the statute, that the "effect" of the trust was to injure the public or any particular person or corporation in this state, nor does it directly and positively charge, as a fact, that

the trust did deprive the public, or any particular person or corporation in this state, of the benefits of competition in the matter of fire insurance rates, but only that the companies did place the control of their business, etc., in the power of trustees, etc., and did agree to abide by, etc., said rates, thereby, as a result, depriving, etc.

It is manifest that the indictment is drawn for the felony denounced in § 4437, subsection (*g*), and § 1007 of the annotated code of 1892. The first section defines the trust—"the criminal conspiracy"—and then declares every such trust to be "inimical to the public welfare, unlawful and a criminal conspiracy." The second provides that every such trust, whether "within or without this state," shall be punishable in this state as a felony when such trust shall "have the effect to injure any person or corporation in this state," and fixes the punishment, in case the offender be a corporation, at a fine of "not less than one thousand dollars." Conspiracies of this class are raised to the grade of felony and pronounced obnoxious to the public policy of this state, and inimical to the public welfare by reason of the great mischief they are known, of all men, to accomplish, as manifested by the course of legislation and decision the country over. Such trusts constitute one of the greatest menaces to public welfare known to modern times, and the legislature has wisely made them felonies and denounced this severe penalty against them.

But the learned court below, in overruling the demurrer to the indictment in this case, declared that he did so because he was of the opinion that "the indictment properly charged a misdemeanor," and in pronouncing sentence he imposed a fine of only five hundred dollars. Clearly he did this on one of three theories: Either he held that this was a statutory misdemeanor for which no penalty was provided, and for which, therefore, he could impose the sentence of five hundred dollars, under § 1454 of the code, or that the indictment charged a common law conspiracy without prescribing a penalty, and that

hence, also, he could impose the sentence under said § 1454; or he held that the indictment was good for a misdemeanor under some of the subsections of § 1006 of said code.

But the perfect answer to all these views is that the conspiracy here denounced is not a misdemeanor, common law or statutory, but a felony, expressly so declared, with its punishment also expressly declared by said § 1007. The judgment is therefore erroneous in fixing the penalty at $500. But it is further clear that the court below, proceeding on the idea upon which the demurrer was overruled, tried the cause throughout on the theory of misdemeanor, and hence it follows that the appellants have not been tried for the felony denounced by the statute, and that, in any event, they must be awarded a new trial. In order, however, that the cause may be proceeded with hereafter properly, under our view of the statute—§§ 4437 and 1007—we proceed to notice the material errors assigned.

The four principal grounds of the demurrer to the indictment are: First, that it does not name any particular person or corporation in Lauderdale county, or this state, as having been injured; second, that it does not lay any venue; third, that the prosecution is barred by the statute of limitations; and, fourth, that it does not aver that the trust had the effect to injure either any person or corporation in this state, or the public generally.

Of each of these grounds now in their order: As to the first, the rule is that where it is the object of the conspiracy to injure any particular person or corporation specifically, the indictment must aver the name of the particular person or corporation to be injured; but where the object is to injure any and all persons who may come within the range of the operation of the conspiracy, it is only necessary to aver that the purpose or effect of the conspiracy was to injure the public. In such case, the pleader cannot, and, hence, need not, aver that any particular party was to be injured. Says Mr. Bishop, Criminal Procedure, vol. 2, sec. 243: "For a conspiracy to defraud the public, the form is substantially the same as where an individ-

ual is to be defrauded; but it does not, for it cannot, set out the names.'' Directly to the same point, clearly, emphatically and in manifold variety of cases, are the following authorities, which conclusively put at rest this proposition, arranging the cases in the order of importance: Am. & Eng. Enc. Pl. & Prac., vol. 4, p. 726 (*d*), note 5; *People* v. *Arnold*, 46 Mich., 271, 272, opinion by Cooley, J.; Bishop's Directions & Forms, sec. 309; 2 Bishop's Crim. Pro., sec. 210; 2 Wharton's Crim. Law (7th ed.), sec. 2349, p. 680; *McKee* v. *State*, 111 Ind., 379, 380; *Clary* v. *Com.*, 4 Pa. St., 212; *Com.* v. *Judd*, 2 Mass., 329, 334, 336, and especially 337; *Regina* v. *Peck*, 36 Eng. Com. Law. Rep., 243; *Com.* v. *Harley*, 7 Metcalf, 509; Bishop's New Crim. Law, vol. 2, p. 117, sec. 210; and Am. & Eng. Enc. L., vol. 4, p. 603 (2). Am. & Eng. Enc. Pl. & Prac., vol. 4, p. 726 (*d*), in note 5, contains a very full collection of authorities.

Judge Cooley says in 46 Mich., *supra:* '' It is necessary to permit this general form of pleading, or some of the worst and most mischievous conspiracies would escape punishment altogether, from the obvious impossibility of making the indictment specific, when the purpose to defraud was general.'' And Mr. Bishop says (2 New Crim. Law, sec. 209): ''Indeed, the combination would appear to be the more obnoxious, in proportion to the numbers against whom it is directed.'' The first ground of the demurrer is, therefore, untenable.

As to the second ground, it is only necessary to say that, in an indictment for conspiracy, the venue may be laid '' either in the county of the original unlawful confederation or in that wherein any overt act pursuant thereto transpired.'' Bishop's Directions and Forms, sec. 281; 2 Bish. Crim. Proc., sec. 236. We think the venue is sufficiently laid in the county of Lauderdale, where the overt acts occurred. See, clearly to this point, 1 Bish. Crim. Proc., sec. 61, p. 34; *People* v. *Mather*, 21 Am. Dec., p. 147; *Ex parte Rogers*, 38 Am. Rep., p. 654;

*Noyes* v. *State*, 41 N. J. Law, pp. 422, 423. The second ground of demurrer is, therefore, untenable.

It may be observed, in passing, that this objection as to the want of allegation as to venue was not specifically made by the demurrer, nor was it specifically made one of the grounds for the motion for a new trial. See, as to this, *Lea* v. *State*, 64 Miss., 201.

The third ground of demurrer presents the statute of limitations as a bar. And under this it is argued, first, that if the indictment is for the original conspiracy, when and as the agreement to place the control of insurance rates in the control of the trustee—the Southeastern Tariff Association—was first formed, that original conspiracy was first formed more than two years before the finding of the indictment; and, second, that the offense denounced by the statute—§§ 4437 (*g*) and 1007 —was complete when the conspiracy was first formed and an overt act in pursuance of it was performed, and that, in that view, the statute began to run from the time of the performance of the said first overt act in pursuance of it, and that such first overt act was performed more than two years before the finding of the indictment. It is true that the conspiracy, to be punishable, must have the "effect to injure" the public, or, the greater including the less, some particular part of the public, as some person or corporation. Whether the phrase "effect to injure" was inserted to make corporations punishable, because the effect or result would be so to injure without regard to intent, since corporations are not ordinarily indictable, as such, for crimes requiring intent (see 2 Morawetz on Private Corporations, secs. 732, 733); or to subject the offender to punishment when the effect of the mere conspiracy alone was, in its essential nature, such as, without reference to any overt act thereunder, to so injure; or whether it means that some overt act thereunder must be averred and proven, the plea of the statute of limitations must equally fail. For the well-settled doctrine is,

that every overt act is a renewal of the original conspiracy then and there—a repeating of the conspiracy as a new offense.

Says the supreme court of New York in *People* v. *Mather*, 21 Am. Dec., 147: "If conspirators enter into the illegal agreement in one county, the crime is perpetrated there, and they may be immediately prosecuted; but the proceedings must be in that county. If they go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county, without any evidence of an express renewal of their agreement. The law considers that wherever they act, there they renew . . . their agreement, and this agreement is renewed as to all, whenever any one of them does an act in furtherance of their common design."

If this indictment presented the original conspiracy as and when first formed, and that conspiracy was so originally formed more than two years before the finding of the indictment, the prosecution would, of course, be barred. Or if, treating this offense as composed of the original conspiracy plus the first overt act done in pursuance of it, and as completed when such first overt act is done, then if such first overt act was done more than two years before the finding of this indictment, in that case, also, the prosecution would be barred. But the conspiracy presented by this indictment is a conspiracy formed in Lauderdale county, within two years before the finding of this indictment, as manifested by overt acts committed within that time, such overt acts operating in law as a renewal, when committed, of the original conspiracy. The question is thus resolved into ascertaining whether the pleader has averred such conspiracy, thus renewed, as a separate, new offense, within the two years, and this the indictment does.

We cannot better point our view on this precise question than by quoting the language of the supreme court of Pennsylvania in *Commonwealth* v. *Bartilson*, 85 Pa. St., pp. 487-489: "The date of the conspiracy should have been laid within the statutory period. . . . In a recent case, the doctrine was

asserted that there is no such thing as a continuing offense; that it is wholly unknown to the criminal law. . . . It was not intended to assert the absurd proposition that a man might not repeat an offense from day to day, as in the case of maintaining a nuisance, and other familiar instances which might be referred to. This may be done daily for an indefinite period. But a man could not be convicted of maintaining a nuisance (erecting the nuisance, that is) charged to have been committed two years prior to the finding of the bill of indictment, by proving that he had continued the nuisance, day by day, to a time within the statutory period." See, as to this distinction between erecting and continuing the nuisance, Bishop's Statutory Crimes, sec. 260, p. 246.

The court proceeds: " In this sense, therefore, of taking the statute, it cannot be said that a completed offense can be continued. It may be repeated from day to day, but the statute runs from the close of each day, and the indictment must charge the offense to have been committed within the statutory period. . . . But where, in conspiracy, an overt act is done within two years, and said act is but one of a series of acts committed by the parties, evidently in pursuance of a common design, and to carry out a common purpose, such acts would be evidence, provided they tend to show that the last act was part of the series and the result of an unlawful combination; and such evidence may satisfy a jury of the existence of a conspiracy at the latter period. And this, though some of the prior acts may have occurred at a time when, as an independent conspiracy, it would have been barred by the statute, for, as before said, the overt acts are the evidence from which a conspiracy may be inferred. Hence it is, that, while, as a general rule, in criminal cases, the venue must be laid in the county in which the offense was committed, yet, in conspiracy, it may be laid in any county in which an overt act has been done by any one of the conspirators. This rule is well settled. . . .. This rests upon the principle that the overt act is evidence of a conspiracy existing

at the time and place where the overt act was committed. . . .
If the overt act charged in the indictment, or proved to have
been done within two years, is sufficient to satisfy the jury of
the existence of a conspiracy at that time, it is wholly immate-
rial when the parties thereto first formed the unlawful combina-
tion in their minds, or gave effect to it by concert of action.
If it has been renewed from time to time, and overt acts com-
mitted through a series of years, and one of said acts has taken
place within two years, each renewal constitutes a fresh con-
spiracy, for which an indictment will lie.'' This reasoning is
clear and conclusive. To the same effect are 4 Am. & Eng.
Enc. L., 625 (2), and note (6).

We have been referred to a number of decisions of the in-
ferior tribunals of the United States, not entirely harmonious
in construing § 5440 of the United States revised statutes mak-
ing punishable a conspiracy to commit any offense against the
United States, defining the offense to be the conspiracy to com-
mit any such offense and doing some act to effect the object of
the conspiracy. But besides the difference between that statute
and our statutes, the United States supreme court has expressly
held that the offense denounced by § 5440 United States statutes
'' does not consist of both the conspiracy and the acts done to
effect the object of the conspiracy, but of the conspiracy alone.''
*United States* v. *Britton*, 108 U. S., 204; *Dealy* v. *United
States*, 152 U. S., pp. 546, 547. These cases afford no help.
The third ground of demurrer cannot, therefore, be maintained.

The fourth ground of demurrer presents a more troublesome
question. It is, that the indictment does not aver that the effect
of the trust was to injure either the public, or any named
person or corporation in this state, as required by § 1007.
This averment, either in the words of the said section or equiv-
alent terms, is essential to the validity of the indictment. It
was, perhaps, the object of the pleader to comply with this re-
quirement in making the averment that the defendants placed the
control of their said business of insurance, etc., in the power

of trustees, etc., thereby "depriving the public of the benefits of competition in the matter of fire insurance rates." In *Deuly* v. *United States*, 152 U. S., 546, it was held, construing § 5440 of Revised Statutes of United States, that an averment that the overt acts were "done according to and in pursuance of said conspiracy," was equivalent to an averment that they were done "to effect the object of the conspiracy." And it is doubtless also true, that from the very nature of a fire insurance trust as to rates, the only injury possibly predicable of its action, would be the destruction of competition as to rates. And there is so much force in these considerations that we have hesitated on this point. But, in view of the fundamental rule that an indictment must charge the acts constituting the offense directly, clearly and precisely, and not argumentatively, inferentially or by the process of exclusion, we feel constrained to hold that this ground of demurrer is well taken, and the demurrer should, on that ground, have been sustained. Enc. Pl. & Prac., vol. 4, p. 722.

Since the case must go back for a proper indictment to be framed, and a trial thereunder, two other propositions must be noticed. It is insisted that an insurance trust is not within the purview of our statute (§ 4437), and *Insurance Co.* v. *State*, 86 Texas, 250, is relied on as showing this. But this decision was a construction of the Texas anti-trust act of 1889. Texas statutes of 1889, p. 141, sec. 1. And it is perfectly manifest that that act did not embrace insurance trusts, for, by its plain terms (see sec. 1) it prohibited only trusts dealing by way of trade or commerce in commodities. Such are its express terms. The word "business" does not occur in it at all. The decision is, therefore, not in point, and, to meet that very decision, the legislature of Texas, in 1895, amended the said act of 1889 (Rev. Statutes of Texas 1895, p. 1090, art. 5313, sec. 1), and prohibited any trust the object of which was to "create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws" of that state.

Such is our statute, § 4437 (*g*). It prohibits any trust the object of which is to place the control of business, "any business, to any extent, in the power of trustees." The lawmakers wisely refrained from any specification of or attempt to enumerate the kinds of business whose control should thus be placed in the power of trustees, for the obvious reason that such kinds of business, in modern life, are multiform. It therefore prohibited any trust whose object was to place the control of any business in the power of trustees, where the effect of such trust should be to injure the public or any particular person or corporation in this state. Such legislation has become very general in the United States, owing to the pernicious results of such trusts. See, for a collection of statutes and decisions, 26 Am. & Eng. Enc. L., p. 237 (*v*); *In re Pinkney*, 47 Kan., 89; *People* v. *North River Sugar Refining Co.*, 2 Law. Rep. Anno., p. 33, and note; *People* v. *Sheldon*, 66 Hun (N. Y.), 594; *Lumber Co.* v. *Hayes*, 76 Cal., 387; *Morris Run Coal Co.* v. *Barclay Coal Co.*, 68 Pa. (P. F. Smith), p. 186; Cook on Stock and Stockholders (3d ed.), vol. 1, sec. 503 (*a*) *et seq.*, with notes; Cook on Trusts (2d ed.), p. 51 *et seq.*; *Havemeyer* v. *Superior Court*, 32 Am. & Eng. Cor. Cases, p. 510; *American Biscuit Co.* v. *Klotz*, 44 Fed. Rep., 721. A stenographer's association was held a trust in *Moore* v. *Bennett*, 140 Ill., p. 69—a very striking case.

Indeed, the act of 1896 (Laws, ch. 56, p. 68) manifests express legislative recognition, not only of insurance as a business which may properly fall within the purview of our anti-trust statute (§ 4437) looking to the nature of the business, but of the further fact, known to the legislature, that fire insurance companies did have trusts in some parts of the country. But it is said that section 7 of that very act repealed § 4437 of the code of 1892, so far as fire insurance companies were concerned. A reading of that act will show that if any such repeal is to result from it, it must be worked out by implication alone; for § 4437 is not named, or referred to, in it at all. But counsel

misconceive section 7, and the whole act. That act, and the act of 1894, chapter 63, were amendatory of § 2330 of the code of 1892, known as the valued policy law, the chief object of which legislation, taken as a whole, is to hold such companies to the value of the property insured, as originally fixed at the time the policy issued, by the terms of the policy, on the basis of which valuation the premiums would have been exacted.

It is true the act of 1896, *supra*, goes further, and also "fixes the amount of taxes to be paid by fire insurance companies." But this added feature covered all else it sought to accomplish, and presents merely a graduated scheme of taxation for competitive companies, according to the varying conditions in the act prescribed—for example, competing companies which made no extra charge on account of the valued policy law, were to pay but two per centum on all premiums, and be relieved of all further taxation (sec. 3), provided they were in no way influenced, directly or indirectly, by any insurance tariff association, etc. Section 4 provided the mode for doing this, the report, affidavit, etc., and further provided that nonconformity to this statutory mode should subject such nonconforming companies to the payment of a $750 privilege tax, to remain till they did comply; and section 5 added further stipulations—sworn statements to be filed with the auditor, etc.—as conditions precedent to the right of even competing fire insurance companies to do business in this state, if they wished to secure the benefits of the low taxation in the act named; and section 7 then declared that competing fire insurance companies which refused to comply with the act at all, ignored or defied it, and competing fire insurance companies which pretended to comply but did not, or attempted to and did not, conform to its requirements, should pay a privilege tax of $1,500.

This, manifestly, is the whole effect of this act. Section 7 says: "Every fire insurance company doing business in this state"—meaning, of course, fire insurance companies licensed to do business here. But § 4439 of the code of 1892 had al-

ready declared that a corporation entering into a trust denounced by § 4437, should not do business here at all. The statutes must be taken together. It is too plain for disputation that to hold that section 7 of the act of 1896, *supra*, meant to license fire insurance companies, which had entered into a trust to place the control of its business in the power of trustees, to do business by paying a license tax of $1,500—the doing of which business through such a trust having already been made a felony—would involve a manifest absurdity. And when the provisions of said act of 1896, denouncing fire insurance trusts in the strongest terms, and declaring in favor of " the freest and most perfect competition between fire insurance companies " as our definite public policy on this subject, and seeking to secure it by tendering the low taxation therein declared to competing companies complying with the terms of said act, are considered in the light of the spirit pervading and underlying the whole act, it is clear beyond doubt that section 7 of said act was not meant to repeal § 4457 of the code of 1892.

We are therefore of the opinion that insurance trusts are within the purview of § 4437 (see 2 Beach on Modern Law of Contracts, sec. 1585, p. 2060), and that said section is not affected by section 7 of the act of 1896.

It follows from the views herein indicated, that the judgment must be reversed, the demurrer sustained, and the indictment quashed. A proper indictment can easily be framed, and the appellants tried thereunder.

*So ordered.*