C. GRAHAM ARCHER *vs.* STATE OF MARYLAND.

S. BURNS WILSON *vs.* STATE OF MARYLAND.

*Criminal Law—Statute of Limitations—Conpiracy to Defraud—Stockbrokers—Indictment—Evidence—Bill of Exceptions—Embracing Distinct Rulings.*

Conspiracy is a common law offense and is a misdemeanor.
. p. 136

Acts 1916, ch. 556, as repealed and re-enacted by Acts 1918, ch. 196, authorizing courts to sentence one, convicted of a crime punishable by imprisonment, to imprisonment either in jail,

the house of correction, or the penitentiary, and empowering the board of prison control to transfer persons from the house of correction to the penitentiary or *vice versa,* did not make all misdemeanors "punished by confinement in the penitentiary," within the exception in Code, art. 57, sec. 11, of misdemeanors so punished from the one year period of limitations otherwise applicable to misdemeanors.          pp. 136-138

Under Code, art. 57, sec. 11, the prosecution of persons charged with conspiracy or other misdemeanors not "placed along with felonies" by the grade of punishment fixed for them by the common law or by statute, must be begun within one year from the date of the conspiracy.          p. 138

When a valid presentment is followed by an indictment which charges in each of the counts the crime charged in the presentment, the date of the presentment is the beginning of the prosecution for the purpose of the one year statute of limitations.          p. 138

In a prosecution for conspiracy, where there is no proof of an unlawful agreement except as that might be inferred from overt acts, its continuance until within one year of the commencement of the prosecution, for the purpose of the statute of limitations, cannot be presumed, but must be proved by evidence of overt acts within that period.          pp. 138, 139

On a prosecution for conspiracy, to which crime the one year statute of limitations applies, where there was no proof of an unlawful agreement except as that might be inferred from overt acts, while it was proper to admit, subject to exception, testimony as to transactions occurring more than a year before the beginning of the prosecution, such testimony would not justify a conviction unless followed up with proof that such acts continued up to within a year of the date of the presentment.          p. 139

In the absence of evidence of any overt act within the year, the evidence admitted subject to exception should, on proper motion, be stricken out.          p. 139

That a ruling refusing a motion to strike out evidence, and rulings refusing prayers, were embraced in the same exception, *held* not ground for refusal to review the ruling on the motion to strike out, the motion and the prayers including the

same proposition of law, the ruling being clearly presented and not confused with other propositions of law by the manner of its presentation, and the result of a refusal to consider the exception being that the traversers would be subject to ten years' imprisonment in the penitentiary in spite of a good legal defense.                                    pp. 139-142

The admission of the books and papers of a bankrupt firm, in the hands of the trustee in bankruptcy, on a criminal prosecution of a member of the firm, does not involve a violation of the provision of the Declaration of Rights that "no man ought to be compelled to give evidence against himself in criminal cases," and that such books and papers were previously in the hands of a receiver for the firm, appointed by a state court, is immaterial.                                    pp. 142-144

An indictment for conspiracy to defraud need not allege the names of the persons conspired against, or that they were unknown, it being sufficient to aver a conspiracy to defraud a class of persons, such as the customers of the traversers and those who might be induced to become such.          pp. 144, 145

An indictment for conspiracy need only state the conspiracy and the object of it; and the means by which it was intended to be accomplished, being only matters of evidence to prove the charge and not the crime itself, need not be set out.          p. 145

A presentment for conspiracy supports counts of the indictment charging traversers with conspiring on a day which was later than that mentioned in the presentment as the beginning of the conspiracy, the objects of the conspiracy being the same, and the time of its existence being within the period fixed by the presentment.                                    pp. 145-147

Though the crime of conspiracy is completed when the unlawful agreement is reached, it is not then exhausted, in the sense that the statute of limitations cannot be tolled by the commission of a subsequent overt act.                    pp. 146, 147

In an indictment of a member of a firm of stock brokers, with others, for conspiracy to defraud the customers of the firm, a charge in effect that the total assets of the firm were less than its total liabilities, being material in connection with other allegations of the respective counts, and only in that connection, *held* that the characterization in the indictment of these facts as constituting insolvency was surplusage, the gist

of the offense charged being, not that the firm undertook to do business when unable to pay all its debts, but that the active member conspired with others knowing its condition to do business in such a manner as to defraud those who were or might become customers of the firm.                          pp. 147, 148

A stock broker is not, as is a banker, a borrower of funds deposited with him, with the right, under proper regulations, to use them for his own legitimate investments, but is rather a *quasi* trustee or agent to execute the orders of his customers, and can use their money or securities only as directed by them, or to protect himself as to liabilities properly incurred for them.                          p. 148

That a broker is in a weak financial condition, or insolvent, does not necessarily render his doing of business a crime, if he keeps the affairs of his customers separate from his own, so as not to subject them to financial risk.                          p. 148

In an indictment for conspiracy to defraud customers of a brokerage firm, a charge of inability of the members of the firm to meet their liabilities as such was implicit in a charge of inability of the firm to meet its liabilities.                          p. 148

In the absence of an abuse of discretion, refusal of a demand for a bill of particulars, or of a request for removal, is not reversible error.                          p. 148

A written partnership agreement is not the best evidence as to the amount actually paid into the firm by a partner therein, and oral evidence as to such amount is admissible.          p. 148

On a prosecution for conspiracy, the petition of creditors of the firm, to which one of defendants belonged, in a bankruptcy proceeding against the members of such firm, and the answer and individual schedule of such defendant in the bankruptcy proceeding, were, as relating to a date after the last overt act in pursuance of the conspiracy, inadmissible.                          p. 149

A witness cannot properly guess as to who gave him instructions to make certain entries.                          p. 149

A witness cannot properly testify as to a telephone conversation when he cannot certainly identify the person with whom he talked.                          p. 149

*Decided February 13th, 1924.*

Appeals from the Criminal Court of Baltimore City (STEIN, J.).

Criminal proceedings against C. Graham Archer and S. Burns Wilson. From judgments of conviction and sentence, said defendants separately appeal. Reversed.

The causes were argued before BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Wm. L. Marbury* and *Albert S. J. Owens*, with whom were *W. L. Rawls, Lloyd L. Jackson, Jr.,* and *Fendall Marbury* on the brief, for C. Graham Archer.

*James McC. Trippe,* with whom was *Samuel K. Dennis* on the brief, for S. Burns Wilson.

*Alexander Armstrong, Attorney General,* and *Lindsay C. Spencer, Assistant Attorney General,* with whom was *Robert F. Leach, Jr., State's Attorney for Baltimore City,* on the brief, for the State.

ADKINS, J., delivered the opinion of the Court.

On the 15th day of December, 1922, a presentment was made by the grand jury of Baltimore City against C. Graham Archer, S. Burns Wilson and Arthur Gordon, for conspiracy, in which it is charged that the said Archer during the time mentioned (from August 11th, 1917, to December 20th, 1921,) was engaged in the business of stockbrokerage in co-partnership with one O. Howard Harvey, trading under the name and style of Archer, Harvey & Company, in the City of Baltimore, and that the said Gordon was during said period the office manager for said firm, and that said Wilson was an intimate friend and associate of Archer; and that on the 11th day of August, in the year 1917, and thence continuously until and including the 20th day of December, 1921, the said Archer, Gordon and Wilson did unlawfully conspire, confederate and agree together, and with each other by divers false pretences to obtain and acquire certain

moneys, goods and properties of the then customers of said brokerage co-partnership, and of such other persons as might believe said false pretences to be true and thereby be induced to become customers of said brokerage firm, with the intention on the part of said Archer, Gordon and Wilson to cheat and defraud the aforesaid customers and the aforesaid other persons who might believe the said false pretences to be true and thereby be induced to become customers of said brokerage co-partnership, of their moneys, goods and properties, against the peace, government and dignity of the State.

On January 4th, 1923, an indictment was found against the said defendants, containing six counts, the first, third and fifth of which charge a conspiracy beginning on August 11th, 1917, and continuing to and including the 19th day of December, 1921, and the second, fourth and sixth charge a conspiracy beginning on the first day of January, 1921, and continuing to and including the 19th day of December, 1921.

Each of the traversers demurred to the indictment and to each and every count thereof, setting out a number of reasons including the following:

> "Because the offense charged in the presentment in the above entitled case is different from the offense charged in each and every count of the indictment, and the date of the presentment therefore is not, as a matter of law, the beginning point of the prosecution of the case, and that the beginning point of the prosecution is the date upon which the true bill was found, to wit, the fourth day of January, 1923, and for that reason each and every count of the indictment shows on its face that the misdemeanor alleged to have been committed was not committed within one year next preceding the commencement of the prosecution, to wit, January 4th, 1923."

The demurrers were overruled.

Whereupon motions to quash were filed by each of the traversers setting out the same reasons as stated in the demurrers, adding this additional reason, viz.:

"Because the offense charged in the presentment
and in each and every count of the indictment shows
on the face of each thereof that the misdemeanor
alleged to have been committed was not committed
within one year next preceding the commencement of
the prosecution, to wit, December 15th, 1922."

These motions were also overruled. Whereupon demurrers to the presentment were filed and overruled.

Pleas in abatement were then filed on substantially the same grounds, demurrers to which were sustained. Then followed demands for a bill of particulars, which were promptly overruled. A suggestion for removal was also overruled, as was a motion for a severance by C. Graham Archer.

The next step was the filing by all the traversers of a plea of limitations on the ground "that the prosecution in this case was not commenced within one year from the time said alleged offense is charged in said indictment to have been committed," which plea was traversed by the State, and issue joined.

Each of traversers then pleaded not guilty. Archer and Wilson elected to be tried before the court without a jury, and Gordon elected to be tried by a jury, which resulted in a severance as to Gordon. The case then proceeded as to Archer and Wilson.

Practically all of the State's evidence was admitted subject to exception.

It included the books and papers of the late firm of Archer, Harvey & Co., and testimony as to entries in those books, and contents of the papers, all of which related to transactions prior to December 10th, 1921. The books and papers were produced by the trustee in bankruptcy of the late firm, Mr. Cator, who had previously been appointed receiver by the Circuit Court of Baltimore City and in that capacity obtained possession of the books. There were also a number of witnesses produced by the State who testified as to transactions had by them with the firm, all of which transactions

were prior to the 10th day of December, 1921. The traversers produced several witnesses, none of whom referred to any later transactions.

At the conclusion of the testimony each of the traversers moved to strike out certain testimony, including the books and papers of the late firm and all testimony relating to the matters contained in said books and papers and each and every answer of witnesses to questions relating thereto; and all of the testimony offered by the State relating to entries in said books and the testimony of witnesses with reference thereto, and to conversations alleged to have been had with any of the traversers herein that related to transactions or occurrences that took place more than one year prior to the commencement of the prosecution. And in the same motion were included two prayers, in which the court was asked to rule as a matter of law:

(1) That the State has not adduced evidence legally sufficient to show that the misdemeanor charged in any count of the indictment was committed within one year prior to the commencement of the prosecution;

(2) That no evidence has been adduced in this case legally sufficient to entitle the court to find this traverser guilty under any count of the indictment.

The court passed the following orders, from which it appears there were four other prayers which do not appear in the record.

"Order by the Court.

"The traverser, C. Graham Archer, moves the court to strike out and exclude from its consideration the following evidence, which was admitted subject to exception, namely:" (here follows the language of the motion.)

"Similar motions offered by S. Burns Wilson.

"Each of these motions is overruled, with exceptions to each traverser and with the right to elaborate them *nunc pro tunc.*

"Charles F. Stein."

"Order by the Court.

"The first four prayers offered by each traverser are the same as 'motions to strike out evidence,' offered subject to exception, and which motions were offered at the close of the taking of the testimony, and on which motions I will act. The other two prayers are demurrers to the evidence. I refuse to act on any of these prayers and give each traverser the proper exceptions to that refusal.

"Charles F. Stein, Judge."

Each of the traversers was found guilty and sentenced to ten years in the penitentiary. From this judgment each of the traversers appealed.

There are eighteen bills of exception, of which all but one relate to rulings on evidence. The eighteenth is to the ruling of the court on the motion to strike out testimony and to the refusal of the court to act on the prayers. Besides, much stress is laid by counsel for traversers on the rulings on the demurrers, motions to quash, and pleas in abatement, which are not the subject of bills of exception.

We have thought it wise to dispose first of the eighteenth exception, because if the refusal to strike out the testimony included in the motion was error, it goes to the root of the whole prosecution.

And we think that ruling was erroneous.

Code, art. 57, sec. 11, provides: "No prosecution or suit shall be commenced for any fine, penalty or forfeiture, or any misdemeanor, except those punished by confinement in the penitentiary, unless within one year from the time of the offense committed."

Conspiracy is a common law offense and is a misdemeanor. Common law misdemeanors are not "*punished* by confinement in the penitentiary" in the sense of the above section, unless the Legislature intended by the Act of 1916, chapter 556, as repealed and re-enacted by chapter 196 of the Acts of 1918, and codified as section 654 of article 27 of the code, to abolish by implication a policy of the state which has been embodied in our statutes for more than a century. If the

section of the Code above referred to is to be so construed, it
means that there is no longer any limitation as to the time
within which any misdemeanor, however trifling, may be
presented, if it is punishable by "any imprisonment what-
ever"; for by that section the criminal courts are authorized
to sentence to a term in either the jail, house of correction or
penitentiary any one convicted of such a misdemeanor.  In-
deed, the power is given the State Board of Prison Control,
by this section, to transfer persons from the house of cor-
rection to the penitentiary, or *vice versa.*

There is certainly nothing in either the titles or the bodies
of the Acts of 1916 and 1918 to indicate that in passing those
Acts the Legislature meant to practically repeal section 11
of article 57 of the Code, which would be the result of the
construction contended for by the State.  On the contrary,
it is perfectly obvious that its purpose was to create a new
agency to deal with the State's penal institutions, and to pro-
vide for the convenient shifting of convicts from one to the
other without regard to the grade of the crime.

Section 654 expressly provides

"that nothing in this section shall be construed to add
to, alter or change the *class* of crimes as they existed
before this act takes effect, with respect to the right
of challenge or with respect to the fees in criminal
cases, or to make any crime infamous by reason of any
sentence to the Maryland Penitentiary, or transfer
thereto, which would not have been an infamous crime
before the act takes effect."

The words, "and punishable by any imprisonment what-
soever or by fine and imprisonment (other than imprison-
ment in default of fine)" show that it was not intended to
change the grade of any crime, but to leave that as it was
already fixed by existing law or might be fixed by future
legislation.

Article 57, section 11, in excepting from the amnesty
given after one year to ordinary misdemeanors those pun-
ished by confinement in the penitentiary, clearly meant to

*class* these with felonies; and in *Schaumloeffel* v. *State,* 102 Md., 470, that intention was recognized. But the provisions of section 654 of article 27 expressly negative the idea that *that section* was intended to "place along with felonies" misdemeanors not so classed by the then existing law or by subsequent legislation.

The argument of the State, that it may well have been the intention of the Legislature to remove the anomalous distinction as to limitations, between the crime of stealing a loaf of bread worth ten cents, which can be prosecuted at any time, and the crime of conspiracy, which could not theretofore be punished after one year, however great its enormity, loses its force when it is remembered that by the simple process of making conspiracy a felony or by making *any designated crime* punishable by confinement in the penitentiary, the Legislature could have corrected the anomalous situation, without removing the oblivion which it has for so long been the policy of the State to give insignificant offenses if not punished within a reasonable time.

We are clearly of the opinion that section 11 of article 57 means *now* just what it meant before the passage of the Acts of 1916 and 1918, and that the prosecution of persons charged with conspiracies or other misdemeanors not "placed along with felonies" by the grades of punishment fixed *for them* by the common law or by statute, must be begun within one year from the date of the conspiracy.

Now assuming the crime charged in each of the counts of the indictment is the crime charged in the presentment, and assuming also the validity of the presentment, the beginning of the prosecution in this case would be the date of the presentment. *State* v. *Kiefer,* 90 Md. 165. That was December 15th, 1922. There is no testimony in the record of any transaction by the late firm of Archer, Harvey and Company after December 9th, 1921.

The theory of the State is that the conspiracy charged as beginning on August 11th, 1917, and January 1st, 1921, was a continuing conspiracy, and that it was kept alive as one continuous offense, not only so long as overt acts continued

to be committed, but so long as the unlawful agreement remained in force. But here there is no proof of an unlawful agreement except as that may be inferred from overt acts. Proof of its continuance, therefore, can only be by overt acts, and it cannot be presumed to continue after the overt acts cease.

It was proper to admit, subject to exception, testimony as to transactions occurring more than a year before the beginning of the prosecution, though it would not justify a conviction unless followed up with proof that such acts continued up to within a year of the date of the presentment. *World* v. *State,* 50 Md. 49. It follows that as there was no evidence of any overt act within the year, the evidence admitted subject to exception should, on proper motion, have been stricken out.

Finally, it is contended that this exception is not properly before us for review because of irregularity in the form of the exception in that the rulings of the court on the motion to strike out evidence and its rulings on the prayers are embraced in the same exception..

This question has been passed on in a number of cases.

In *Tall* v. *Steam Packet Co.,* 90 Md. 248, the single bill of exception embraced the rulings on several questions of evidence and on the prayer. The Court said, through CHIEF JUDGE McSHERRY: "This is an unusual and an erroneous way to present such distinct propositions. The ruling on each question should form the subject of a separate exception. 'We are,' says the Court in *Ellicott* v. *Martin, &c.,* 6 Md. 517, 'of opinion that each distinct exception which embraces an independent proposition of law, should be signed and sealed by the court below before it can be regarded as a valid exception. This remark does not apply to a series of consecutive prayers offered by the counsel. In such a case the ruling of the Court, in either granting, rejecting or modifying the prayers, may be regarded as a single act, and one exception, if properly taken and executed, may embrace the whole.' Passing by this irregularity, though by no means in-

tending thereby to establish a precedent which will be followed hereafter, we come to the case as we find it."

In *Acker, Merrall & Condit Co.* v. *McGaw,* 106 Md. 536, 561, four exceptions were included in one bill of exception; two to rulings on evidence, one to granting of motion to strike out testimony and one on the prayers. The court, through JUDGE BURKE, referred to the irregularity and to what was said in *Tall* v. *Steam Packet Company, supra,* "although the court did not refuse to consider the case because of this irregularity," and refused to dismiss the case upon this ground, although expressing disapproval of the method.

In *Junkins* v. *Sullivan,* 110 Md. 539, in each of four of the bills of exception several distinct rulings on evidence were embraced, nineteen in one of them. The Court, through CHIEF JUDGE BOYD, refused to consider these exceptions, referring to previous warnings. The judgment, however, was reversed on other grounds.

In *Balto. & O. R. R. Co.* v. *Rueter,* 114 Md. 687, the appellee moved to dismiss the appeal on the ground that there was but one bill of exceptions embracing exceptions to the rulings of the court below and seven motions to strike out evidence admitted subject to exception and on the prayers. The court, through JUDGE THOMAS, referred to the previous cases and said: "In neither of these cases were the irregularities referred to regarded as sufficient ground for a dismissal of the appeal, and the motion in this case must be overruled. But as the ruling on the prayers may be regarded as a single act, and may be embraced in one exception, where exceptions to other rulings are included in the same bill of exceptions they cannot be treated as valid exceptions, and only the exception to the rulings on the prayers will be considered." In that case, however, JUDGE THOMAS said, in the view the court took of the case, it would not have been necessary to consider the questions raised by these exceptions, even if they had been properly presented.

Again, CHIEF JUDGE BOYD, in *Harris* v. *Hipsley,* 122 Md. 418, speaking for this Court, refused to consider a bill of exceptions which embodied the rulings of the trial court on

three several and distinct matters, except as to the ruling on the prayers.

In *City Dairy Co.* v. *Scott,* 129 Md. 556, the Court, through JUDGE THOMAS, said: "We have considered the exception to the ruling of the court on the prayers, notwithstanding the exception includes rulings on motions to strike out evidence, contrary to the approved practice in this State."

In *Eastern Shore Brokerage Company* v. *Harrison,* 141 Md. 91, each of several of the numerous bills of exception embraced the rulings on a number of questions. The Court, through JUDGE THOMAS, refused to consider these exceptions.

It will be seen by the action of this Court in the above cases that the objectionable practice has been regarded by this Court as an irregularity, and that it has felt at liberty to disregard this irregularity in several of the cases. The question does not appear to have been presented in a criminal case.

In the present case, as will be seen by JUDGE STEIN's order above set out, four of the six prayers offered by each of the traversers "are the same as motions to strike out evidence." Only two of these prayers are embraced in the bill of exception. The motion and the prayers include the same proposition of law. While it was technically an irregularity, in principle the irregularity is less objectionable than were those presented in the cases above referred to.

There does not seem to be any reason why in a criminal case the exception should not be considered as if it contained only the ruling on the motion to strike out evidence and disregarded as to the prayers. That would be excluding all but the single exception to the ruling on the motion to strike out.

Besides, something more important is here involved than enforcing compliance with an approved practice as to a matter within the discretion of the court.

The ruling appealed from is clearly presented to the Court and in no way confused with other propositions of law by the manner of its presentation. The result of a refusal to consider this exception would be to subject the traversers to ten years' imprisonment in the penitentiary in spite of a

good legal defense.   We do not regard this irregularity as sufficient to warrant us in taking such a position.

In deciding that the motion to strike out "the books and papers of the late firm and all testimony relating to the matters contained in said books and papers and each and every answer of witnesses to questions relating thereto" should have been granted, we do not hold that this evidence was inadmissible, because, as contended by appellants, the admission of it would be in violation of article 22 of the Declaration of Rights of the State of Maryland, which provides that "no man ought to be compelled to give evidence against himself in criminal cases."

It was decided in *Blum* v. *State*, 94 Md. 375, that where the books and papers of the traverser had been taken possession of by a receiver appointed by a State court and acting under its orders, they could not be used in evidence against him in a criminal prosecution.   But that decision was based on the fact that the receiver held the books and papers "as the hand of the court whose control is exerted for the benefit of those ultimately found entitled to the subject of litigation, and not to aid the State in making out a case in a criminal prosecution."   It was held in that case that to permit the receiver, who had obtained possession of them for another purpose under the order appointing him, to produce them in evidence in a criminal prosecution, would be equivalent to an order of court directed to the traverser, if there were no receivership, commanding him to produce these books and papers to be used in evidence for the State.

There is no such question in the present case.   Here the title to the books and papers of Archer, Harvey & Company as part of the property of that firm, passed to the trustee in bankruptcy, under a proceeding in the United States Court. The fact that they had previously been in the hands of a receiver appointed by the State court had no material bearing on the question, and the situation was the same as if they had passed directly from the firm to the trustee in bankruptcy and had never been in the possession of an agent of a State court.

JUDGE PEARCE, in the *Blum* case, *supra,* said he was content to rest the decision of this Court upon the exposition of the law contained in the case of *Boyd* v. *United States,* 116 U. S. 616. That case was cited by counsel in a later case, *Johnson* v. *United States,* 228 U. S. 457, in which case the Supreme Court, through MR. JUSTICE HOLMES, said:

"A party is privileged from producing the evidence, but not from its production. The transfer by bankruptcy is no different from a transfer by execution of a volume with a confession written on the fly leaf. It is held that a criminal cannot protect himself by getting the legal title to corporate books. But the converse proposition is by no means true, that he may keep the protection from the introduction of documentary evidence that he would have had while he retained it, after the title and possession have gone to some one else. It is true that the transfer of the books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. Of course, a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu,* as this did, the use of it in court does not compel the defendant to be a witness against himself."

In *Lawrence* v. *State,* 103 Md. 33, this Court said: "In the recent and valuable work on *Evidence of Professor Wigmore* it is affirmed, upon an exhaustive and discriminating review of the authorities, that it is universally conceded that chattels and documents in the possession of an accused party are within the protection of the constitutional provisions in question, if sought to be produced in evidence through process against him as a witness, but if obtained from him otherwise than by the use of such process they are not within the privilege which these provisions confer. 4 *Wigmore on Evidence,* sec. 2264." And in commenting on the *Blum* case, *supra,* it was said that the question as to the admissibility of the testimony which the Court had under consideration in that case had reference to evidence produced under process

from the court practically the same as if directed to the trav-
erser.

We hold that the books and papers of Archer, Harvey &
Company would have been admissible if they had contained
any entries within the period of limitations, or if there had
been evidence in the case of overt acts within such period.

We find no reversible error in any of the other rulings in
the case. In our opinion the demurrers to, and the motions
to quash, the presentment and the indictment, were prop-
erly overruled; and the demurrers to the pleas in abatement
were properly sustained.

The demurrers to the presentment and indictment are
based substantially on:

(a) The failure to allege the names of the persons con-
spired against, or some of them, or that they were unknown.

(b) The failure to allege the methods by which the con-
spiracy was to operate.

(c) The disclosure on the face of the presentment and in-
dictment of the bar of the statute of limitations.

(d) The alleged incorrect standard of solvency set out in
each of the counts in the indictment and the assumption
therein of the insolvency of the partnership as such, without
taking into account the personal responsibility of the individ-
ual partners to pay the partnership debts.

(e) Alleged inflammatory matter.

Taking these in order:

(a) "The indictment must show that the conspiracy was
to defraud some person or some class of persons. It is not
necessary that there be a definite person or number of per-
sons, if it is shown that some one was to be defrauded. An
allegation showing a conspiracy to defraud the general pub-
lic or a particular class is sufficient." 5 *R. C. L.* 1083.
"Where the conspiracy is directed against a particular per-
son or the object of the conspiracy has been effected so that
the person or persons intended can be ascertained, he or they
should be designated by name, or the reason why such desig-
nation is not made should be stated; but where no intent as

to any particular person was formed it should charge an intended wrong against some person, persons, or class of persons or the general public. This, however, will be sufficient without designating any particular individual." 12 *Corpus Juris,* 617. See also *Rex* v. *De Berenger,* 3 Maule & Sel. 67; *People* v. *Smith,* 239 Ill. 91; *Comm.* v. *Judd,* 2 Mass. 329; *McKee* v. *State,* 111 Ind. 378; *Lowell* v. *People,* 229 Ill. 227; *People* v. *Gilman,* 121 Mich. 187; *Fire Insurance Companies* v. *State,* 75 Miss. 24; 2 *Bishop's New Crim. Proc.,* sec. 243. In a conspiracy of the kind charged in this case it could not be known by the alleged conspirator on whom it would operate; and the then customers of traversers and those who might be induced to become such, were properly treated as a class. The Maryland cases cited by appellant deal with an entirely different class of cases.

(b) "In a prosecution for a conspiracy, it is sufficient to state in the indictment, the conspiracy and the object of it; and the means by which it was intended to be accomplished need not be set out, being only matters of evidence to prove the charge and not the crime itself." *State* v. *Buchanan,* 5 H. & J. 317.

(c) There is nothing on the face of the presentment or indictment, or any of the counts thereof, to show that the prosecution was barred by limitations.

The presentment charges that the traversers on the 11th day of August, in the year 1917, and thence continuously until and including the 20th day of December, 1921, did unlawfully conspire," etc. The indictment in three of the counts charges that the traversers on the 11th day of August, 1917, and thence continuously to and including the 19th day of December, 1921, did wrongfully and unlawfully conspire, etc., and in three other counts the beginning of the conspiracy was stated to be January 1st, 1921, and that it continued until and including the 19th day of December, 1921. The presentment was made on the 15th day of December, 1922.

Now the prosecution dates from the presentment, provided it is valid and supports the indictment. *State* v. *Kiefer,* 90 Md. 165.

The contention of appellants is that the crime charged was complete on the day the traversers are alleged to have first conspired, which in the presentment and in each of the counts of the indictment was more than a year before the date of the presentment; and that conspiracy is not a continuing offense.

In 5 *R. C. L.* 1077, it is said: "With reference to the question when the statute of limitations operates to bar a prosecution for conspiracy, the authorities are in conflict. Some courts take the view that a conspiracy is not a continuing offense in such sense that each overt act will remove the bar of the statute against the original conspiracy; but that, in order to avoid the bar, the indictment must charge a conspiracy and an overt act within the limitation period, and the evidence must establish not only an overt act within that period, but also the existence of a conspiracy within that period, although the proof in this respect may be aided by the proof of the existence of a conspiracy beyond the limitation period. Other courts seem to take the view that the conspiracy is a continuing offense, so that the statute is tolled as to the original conspiracy each time an overt act is committed."

We find the reasoning of MR. JUSTICE HOLMES in *United States* v. *Kissel,* 218 U. S. 601, more satisfactory than that of courts which are in opposition to the conclusion reached in that case, he says: "The argument (that a conspiracy is a completed crime, etc.,) so far as the premises are true, does not suffice to prove that a conspiracy, although it exists as soon as the agreement is made, may not continue beyond the moment of making it. It is true that the unlawful agreement satisfies the definition of the crime, but it does not exhaust it. It is also true, of course, that the mere continuance of the result of a crime does not continue the crime. * * * But when the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural

thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one." The principle announced in that case was approved in *Hyde* v. *United States,* 225 U. S. 347, and in *Brown* v. *Elliott,* 225 U. S. 392.

In 12 *Corpus Juris,* 612, it is said that the weight of authority supports this view, and we find nothing in the Maryland cases cited by appellant in conflict therewith. They do not deal with the question of limitations. They hold that the crime of conspiracy is complete when the unlawful agreement is reached. They do not decide that it is then exhausted. *Bloomer* v. *State,* 48 Md. 521; *Lanasa* v. *State,* 109 Md. 602; *Garland* v. *State,* 112 Md. 83. It frequently happens that a conspiracy does not get into full operation and is not discovered within a year from its inception. It would be most unfortunate if it were necessary to hold that the conspirators could, after the expiration of a year, pursue their unlawful designs without fear of prosecution.

On the theory of a continuous conspiracy during the continuance of overt acts, the presentment supports even the three counts of the indictment which charge traversers with conspiring on a later day than that mentioned in the presentment as the beginning of the conspiracy, the objects of the conspiracy being the same, and the time of its existence being within the period fixed by the presentment.

(d) Here the thing of importance is not the legal definition of insolvency, but the facts as to the actual financial condition of the traversers. The indictment charges in effect that the total assets of the firm were less than its total liabilities. That was material in connection with the other allegations of the respective counts, and only in that connection. The characterization of these facts and working them into a definition may be properly treated as surplusage. The gist of the offense charged was not that the firm undertook to do business when it was unable to pay all its debts, but that the active member conspired with others knowing its

condition to do business in *such a manner* as to defraud those who were or might become customers of the firm.

Notwithstanding the weak financial condition of a broker, his customers need not suffer if proper regard is had to keeping their affairs separate from his own. When he does not do this he subjects them to a financial risk which he has no right to take for them, whether he be solvent or insolvent; and, under certain circumstances, this constitutes a crime. His is not the position of a bank, which is held to be a borrower of funds deposited with it, and has the right, under proper regulations, to use them for its own legitimate investments. He is rather a *quasi* trustee or agent to execute the orders of his customers, and can only use their money or securities as directed by them, or to protect himself as to liabilities properly incurred for them.

As to the alleged disregard, in the allegation objected to, of the personal responsibility of the individual members of the firm, we do not find justification for that criticism, as a charge of inability to meet their liabilities as members of the firm is implicit in the charge of the inability of the firm to meet such liabilities.

(e) We find no substantial justification for this criticism. There was no abuse of discretion in the refusal of the demand for a bill of particulars or in the refusal to remove the case, and therefore these rulings are not reversible errors. *Lanasa* v. *State, supra; Downs* v. *State,* 111 Md. 241.

This brings us to the seventeen bills of exceptions which relate to rulings on evidence.

The motion to strike out testimony, which we discussed in connection with the eighteenth exception, includes all of the testimony in the other exceptions, so little need be said in reference to these specific exceptions.

There was no error except the general one, in the ruling on the first exception. The point that the written agreements were the best evidence was not well taken. The information sought was not what was agreed to, but what was actually paid in.

As to the second and third, the books would have been admissible if there had been any evidence of an overt act within the period of limitations.

The evidence in the fourth, fifth, sixth, eleventh, and sixteenth was as to matters occurring more than a year before the beginning of the prosecution, and was not objected to on any other ground. The testimony to which these and the second and third relate, should have been stricken out on the motion. The seventh was abandoned.

The eighth was to the admission of the petition of creditors in the bankruptcy proceeding, and the answer and individual schedule of Archer. This evidence was offered apparently to show an admission of insolvency by Archer. It relates to a date after the last overt act and for that, if not no other, reason should have been excluded.

The ninth was to the admission of the additional schedule filed by Archer showing the ownership by the firm of a seat on the Stock Exchange. This was unimportant and could have done no harm. The tenth was to the refusal to permit a witness to answer a question of counsel for traversers on re-cross examination. It does not appear to have been proper re-cross examination, though the question would have been relevant if it had been propounded at the proper time.

The twelfth and thirteenth were to permitting a witness to guess as to who gave him instructions to make certain entries. The objections should have been sustained.

The fourteenth and fifteenth were to permitting a witness to express an opinion without stating facts. These rulings were erroneous.

The seventeenth was to permitting a witness to testify in reference to a conversation over the 'phone when he could not certainly identify the person with whom he had talked. This ruling was erroneous.

For reasons hereinbefore stated we do not feel called upon to review the refusal of the trial court to act on the prayers of traversers, which was one of the subjects of the eighteenth bill of exception, although that question was most ably and interestingly argued by counsel.

For the error pointed out in the refusal of the motion to strike out testimony admitted subject to exception the judgment must be reversed.

> *Judgments reversed, and case remanded for a new trial.*

---

On motion for reargument:

A motion for reargument has been filed in this case. It is based on two grounds:

1. Alleged error in rulings by this Court in matters of law;

2. Alleged mistake of this Court as to facts.

We shall not refer to the first ground further than to say that we find no reason to modify the views heretofore expressed by us as to the law of this case. The cases cited in the motion decide nothing in conflict with our interpretation of the law.

As to the second ground, counsel for the State are in error in assuming that we overlooked any of the testimony referred to in the motion.

The testimony as to entries referred to on the 20th and 21st was expressly and, as we think, properly ruled out by JUDGE STEIN, because it was uncertain when the transactions represented by these entries had occurred. The entries were actually made after the accountants took charge of the office. JUDGE STEIN directed the statements made by the accountant to be amended so as to show the state of affairs as of December 19th.

There is nothing in the record to indicate that the entry of December 19th had any relation to the alleged conspiracy.

The testimony of Jones, referring to a certain entry made on the 20th: "I do not know the date it was written in, but it is operative as of December 20th," simply means, as we understand it, that it appeared in the books as of December 20th. This witness did not profess to be familiar with the actual transactions.

For the above reasons the motion will be overruled.